**B. B. SENSABAUGH, Jr., Plaintiff,**

v.

**RAILWAY EXPRESS AGENCY, INC., OF VIRGINIA, c/o Mr. W. W. Meredith, Jr., Registered Agent, et al., Defendants.**

Civ. A. No. 72–C–6–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 14, 1972.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for plaintiff.

Christian, Barton, Parker, Epps & Brent, Richmond, Va., and Peter G. Wolfe, REA Express, Inc., New York City, for defendants.

## OPINION AND JUDGMENT

DALTON, District Judge.

This action is brought under the Railway Labor Act, 45 U.S.C. § 151 et seq., and the jurisdiction of this court is founded on the provisions of 28 U.S.C. §§ 1331(a) and 1337 [1]. The action

---

1. § 1331(a)
The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum

arises under federal law and the amount in controversy exceeds $10,000.

Plaintiff filed a complaint on January 5, 1972, and alleges that on or about August 30, 1971, the defendants entered into a conspiracy to discriminate against plaintiff by: 1) abolishing plaintiff's job without reducing the work force, 2) refusing to honor plaintiff's bid for another job pursuant to the terms of the collective bargaining agreement, 3) failing to process plaintiff's grievances for contractual violations, and 4) refusing to pay plaintiff the Supplemental Unemployment Benefits to which he is entitled under Rule 13 of the collective bargaining agreement between Railway Express Agency (REA) and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (Brotherhood). Because of such discrimination, plaintiff seeks an injunction against defendant for future actions of this nature, and desires reinstatement with back pay, along with damages for injuries suffered.

Defendant Brotherhood, on February 28, 1972, filed a motion for summary judgment dismissing plaintiff's complaint or, in the alternative, summary judgment on the merits.

Defendant REA filed an answer on April 17, 1972, denying plaintiff's allegations and stating that since plaintiff failed to exhaust his administrative remedies, this court was without jurisdiction.

The facts of the case are as follows:

REA Express is an express carrier subject to Chapter 1 of the Interstate Commerce Act. Its relations with its employees are governed by the provisions of the Railway Labor Act (45 U. S.C. § 151 et seq.).

The Brotherhood is the duly designated collective bargaining representative pursuant to the provisions of the Railway Labor Act, and represents all employees of REA Express, with minor exceptions. Pursuant to this representation, the Brotherhood has negotiated collective bargaining agreements with REA Express covering rates of pay, rules, and working conditions of the employees so represented. Among the provisions of the basic collective bargaining agreement are provisions establishing seniority districts, seniority rosters for each district, and for promotion, assignment and displacement on the basis of seniority.

Under the agreement, whenever REA Express has a new position or a vacancy in an existing position of 30 days' duration, it bulletins this position in the seniority district in which the position exists. Employees on the seniority roster in that district can then bid for the position. If the senior bidder is qualified to perform the work, he receives the position.

Whenever REA Express abolishes jobs, an individual holding such job may "bump" a junior employee by the exercise of his seniority. Among the provisions of the seniority rules is Rule 3, paragraph (o)[2].

The substance of this rule is that when there is a bulletined new position or a vacancy, a senior qualified furloughed employee has a right to be as-

---

or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

§ 1337

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

2. (o) When a bulletined new position, or vacancy, is not filled by an employee in service senior to a furloughed employee who has protected his seniority as provided in this rule, the senior qualified furloughed employee will be assigned and called to fill the position. Furloughed employees failing to return to service within seven (7) calendar days after being notified (by mail or telegram sent to the last address given) or give satisfactory reason for not doing so will be considered out of service.

signed to the position even though it may be bid for by a junior employee.

In addition, Rule 12 of the collective bargaining agreement [3] recognizes the right of REA Express to consolidate offices and/or to transfer positions of work. The agreement provides for notice to the General Chairman of the Brotherhood's System Board with jurisdiction over the work involved, agreement with REA Express with respect thereto, and for the assignment of the consolidated or transferred work. The latter provisions of Rule 12 give the employees holding the work which is consolidated or transferred to another seniority district the right to follow the work into the other seniority district and a prior right to the newly established consolidated position. Once, however, the employee is assigned to the newly consolidated position, his seniority is dovetailed into the seniority roster of the new district and any changes in assignments or displacements which thereafter occur are based on his position on the new seniority roster. It was the application of these rules which led to the displacement of the plaintiff, Mr. Sensabaugh.

Plaintiff originally became employed by REA Express on May 18, 1960, and was the only individual actively employed at Lexington, Virginia. He held the position of Agent and his seniority date, i. e., the date when he was first

3. Rule 12—Transfers and Consolidations

(a) This Agreement recognizes that two or more offices or departments may be consolidated and/or positions or work involving a position may be transferred from one seniority district to another after conference and agreement between the Management and the duly accredited representatives of the employes. In the event of failure to make an agreement within sixty (60) days after notice is given to the General Chairman or General Chairman representing the employes to be affected by the contemplated change, the matter may be referred by either party to final and binding resolution in accordance with Sections 3 and/or 7 of the Railway Labor Act as amended. The issues submitted for such determination shall not include any questions as to the right of the Company to make the change but shall be confined to the manner of implementing the contemplated change.

(b) Employes may follow their positions or work when same is transferred from one seniority district to another. The incumbents will have prior rights to the positions to be transferred, if they elect to accompany same. Those electing not to follow their positions and work may exercise their seniority rights and their positions will be bulletined first in the seniority district from which they are to be transferred, and if necessary, second in the seniority district to which they are to be transferred. Seniority of employes transferring under such circumstances shall be transferred to the district to which they are transferred.

(c) Employes filing applications for positions bulletined on other districts or on other rosters will, if they possess sufficient fitness and ability, be given preference over status employes, non-employes and employes not having seniority rights under this Agreement. If two or more employes file applications for such positions they will be given preference in accordance with their seniority rights.

(d) Employes voluntarily transferring without their positions from one seniority district to another will acquire seniority in the district to which transferring as of the date of transfer and will retain and continue to accumulate seniority in district from which transferring. In the event such employes are displaced on account of force reduction or the exercise of seniority rights they must exhaust their rights in the new seniority district before being permitted to displace junior employes in the district from which transferred.

(e) When a consolidation or transfer as provided in paragraph (a) requires an employe to change his residence such employe shall receive time off to make the transfer, transportation for themselves, dependent members of their family and personal property. They shall also receive a Five Hundred Dollar ($500) transfer allowance and be protected against loss in the sale of their homes or cancellation of leases.

(f) Employes exercising seniority rights to new positions or vacancies which necessitate a change of residence will receive free transportation (where procurable) for themselves, dependent members of their family, and household goods, but free transportation of household goods under this circumstance need not be allowed more than once in a twelve (12) month period.

able to bid for a bulletined position, was October 18, 1965. In February, 1971, because of declining business, REA Express, by agreement with C. W. Wade, then General Chairman of the South Atlantic District Board of Adjustment of the Brotherhood, consolidated the Lexington station with the Staunton, Virginia, station. In accordance with Rule 12 of the collective bargaining agreement, plaintiff was given the right to follow his work to Staunton, his seniority was dovetailed into the Staunton seniority roster, and a new position was created to which he was assigned, which included, among other things, the pick-up and delivery service at Lexington, formerly performed by the Lexington station.

In this new position, plaintiff performed over-the-road (OTR) truck service from Staunton to Covington, Virginia. The pick-up and delivery service at Covington was performed by the Covington station at that time.

In August, 1971, because of declining business, the management of REA Express decided to consolidate the Covington station with the Staunton station. An agreement for this consolidation was reached with General Chairman Wade in accordance with Rule 12.

Under Rule 12 of the collective bargaining agreement, Mr. L. K. Ray, then the agent at Covington, was entitled to the new position, to have his seniority dovetailed into the Staunton seniority roster, and to be assigned to the job which would include the OTR service to Covington as well as the local pick-up and delivery service to Staunton. In this event, plaintiff would be displaced and would be required to exercise his seniority rights to bump a junior man if he could. This new situation was analogous to plaintiff's move to Staunton, when the Lexington station was consolidated with Staunton and plaintiff was given prior rights to a new job, which included pick-up and delivery service at Lexington, along with other service.

After the Covington consolidation agreement, REA Express bulletined a new job which included OTR truck service at Covington and Lexington, as well as to other points. Not all points were served every day. At the same time, the carrier served notice of abolishment of plaintiff's job which included work to be performed in the new consolidated position. Mr. William A. Hanger, a local chairman of the Brotherhood's local lodge grievance committee and Vice General Chairman of the South Atlantic District Board of Adjustment of the Brotherhood, objected to the management of REA Express on the ground that the newly bulletined position involved more work than one man could perform and that as a consequence the management should not have discontinued plaintiff's job. The management subsequently withdrew the bulletin, pending an investigation of the matter.

Subsequently, it readvertised the newly consolidated position on September 9, 1971. By this time, Mr. Ray, the former Covington agent, had indicated that he did not wish to follow his work from Covington. This meant that the newly consolidated position was then open for assignment to employees on the Staunton seniority district roster in order of seniority. Plaintiff bid for the job; however, he was not assigned the job and instead it was assigned to Mr. A. B. Crist, who had greater seniority and was entitled under Rule 3(o) of the collective bargaining agreement to be called to fill the position and assigned thereto.

Thereafter, Mr. Hanger submitted a grievance to local REA Express management, which was declined. By agreement between the Brotherhood and REA Express, a so-called Public Law Board had been created pursuant to the provisions of Section 2, Second, of the Railway Labor Act (45 U.S.C. § 152(2)) to hear and determine grievances arising out of the interpretation and application of collective bargaining agreements. Plaintiff did not request the Brotherhood to submit his grievance to this Special Board of Adjustment No. 752. Nor did plaintiff exercise his right to

submit his grievance himself to the Third Division of the National Railroad Adjustment Board (NRAB) created to render final and binding determinations on employee grievances subject to Section 3 of the Railway Labor Act (45 U. S.C. § 153).

■ The primary issue for consideration by this court is whether plaintiff failed to exhaust his administrative remedies before seeking judicial redress for his grievances. Plaintiff alleges in his complaint "That recourse to the contractual grievance procedure or to the Adjustment Board would be futile, and plaintiff is excused from pursuing any such remedy as a prerequisite to maintaining the instant action. The contractual remedy is administered and the members of the Adjustment Board were selected by the very parties (defendants herein) against whom plaintiff's complaint is directed." This court is of the opinion that no employee of REA Express may disregard established grievance procedures, agreed upon by labor and management, merely because he feels such action would be "futile."

Numerous cases have judicially recognized the existence of these internal remedies. Neal v. System Board of Adjustment (Missouri Pacific R.), 348 F.2d 722, 726 (8th Cir. 1965); Gainey v. Brotherhood of Railway and Steamship Clerks, 177 F.Supp. 421, 427, 431 (E.D. Pa.1959), aff'd 275 F.2d 342 (3rd Cir. 1960), cert. denied 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153; Fagan v. Pennsylvania R. R. Co., 173 F.Supp. 465, 474 (M.C.Pa.1959); Martin v. Kansas City So. Ry. Co., 197 F.Supp. 188, 192–193 (W.D.La.1961); Long Island City Lodge 2147, etc. v. Railway Express Agency, Inc., 217 F.Supp. 907, 909 (S.D.N.Y. 1963).

Similarly, with these internal remedies so definitely available, resort to them, or an adequate reason for failure so to do, is a prerequisite to equitable relief against the union or its officers in the federal courts. Neal v. System Board of Adjustment (Missouri Pacific R.), *supra*, at 726 of 348 F.2d; Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210 at 213–214, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Fingar v. Seaboard Air Line R. R. Co., 277 F.2d 698, 700–701 (5th Cir. 1960); Gainey v. Brotherhood of Railway Clerks, *supra*, 275 F.2d 342, 345 (3rd. Cir. 1960); Long Island Lodge 2147, etc. v. Railway Express Agency, *supra*, 217 F.Supp. 907, 909–910 (S.D.N.Y.1963); Martin v. Kansas City So. Ry., *supra*, pp. 191–193 of 197 F.Supp. Plaintiff's statement that resort to the contractual grievance procedure or to the Adjustment Board would be "futile" because members of the Adjustment Board were selected by defendants is not an adequate reason for plaintiff's failure to use the internal remedies.

When the plaintiff complained to Mr. Hanger, local chairman of the Brotherhood in Waynesboro, Virginia, and Vice General Chairman of the South Atlantic District Board, Mr. Hanger submitted a grievance to the local REA Express representatives (letter dated August 30, 1971, to Mr. B. W. Sellers, Jr., Assistant Reg. Mgr.) based upon a claim that plaintiff's old job should not have been abolished. Receiving no reply, Mr. Hanger, on September 10, 1971, wrote to Mr. P. C. Dotson, Regional Manager of REA Express at Temple Hill, Maryland, concerning his grievance.

The REA Express management contacted Mr. C. T. Rice, Jr., present General Chairman of the South Atlantic District Board of Adjustment of the Brotherhood and on September 7, 1971, a conference was held on the matter. It was concluded that the various actions of REA Express were in accordance with the provisions of Rule 12 of the collective bargaining agreement, as Mr. Rice testified in his sworn affidavit of February 25, 1972. The REA Express declined any claim presented by the plaintiff. Mr. Rice wrote Mr. Hanger a letter, dated September 14, 1971, explaining that the consolidation of the Lexington and Covington offices "has been consummated in accordance with

the provisions of Rule 12(b) of the Agreement."

Subsequently, Mr. Hanger wrote to plaintiff, in a letter dated September 21, 1971, that since "it (consolidation) has been agreed to by General Chairman C. T. Rice, . . . there was nothing I could do now." He further stated "I am sorry that I can do no more, as General Chairman Rice is over me."

In a sworn affidavit, dated May 8, 1972, Mr. Hanger stated that there was nothing more he or his union intended to do on plaintiff's behalf. He also stated that "based upon my experience of approximately 20 years with the union, there was nothing more which Mr. Sensabaugh could have effectively done after having General Chairman C. T. Rice side with REA and indicate no intention of pursuing Mr. Sensabaugh's grievance any further."

However, Mr. Rice, in his affidavit of February 25, 1972, stated that Special Board of Adjustment No. 752 existed to hear and determine disputes concerning the interpretation and application of collective bargaining agreements between the parties, and that "an individual employee such as Mr. Sensabaugh also has the right to individually submit any grievance claim arising out of the interpretation and application of collective bargaining agreements to the Third Division of the National Railroad Adjustment Board established by Section 3 of the Railway Labor Act." He further stated that plaintiff never requested the General Chairman of the South Atlantic District Board of Adjustment of the Brotherhood or the union itself to submit a grievance to the Special Board of Adjustment No. 752 nor did he individually submit a grievance claim to the Third Division of the NRAB.

The facts of this case show that there was some disagreement between Vice General Chairman Hanger and General Chairman Rice over what plaintiff should do. Mr. Hanger, in his affidavit, stated that "it was, and still is, my opinion that Mr. Sensabaugh had no additional remedies under the grievance pro-cedure of the REA-Union Agreement and that he had to employ an attorney and utilize the courts or drop the matter." Mr. Rice stated that Mr. Sensabaugh could pursue the matter individually by submitting a claim to the Third Division of the NRAB or request his or the union's assistance in submitting a claim to the Special Board of Adjustment No. 752. While plaintiff apparently got the impression from Mr. Hanger that there was nothing more to be done outside of the courts, he did not pursue his remedies further as required before coming to this court. No final decision on the matter was reached either by Special Adjustment Board No. 752 or the Third Division of the NRAB.

Since plaintiff neither requested the Brotherhood to pursue his grievance before the Special Board of Adjustment No. 752 nor individually submitted a grievance claim to the Third Division of the NRAB, he cannot claim that the union failed to properly represent him with respect to his claim. The grievance procedures of the Railway Labor Act are a unique form of compulsory arbitration which must be utilized. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622; Order of Railway Conductors and Brakemen v. Spokane, P. & S. R. Co., 366 F.2d 99 (9th Cir. 1966), cert. den. 385 U.S. 1025, 87 S.Ct. 752, 17 L.Ed.2d 673.

■ It was the duty and obligation of plaintiff to either ask the Brotherhood to submit his grievance to the Special Board of Adjustment No. 752 or to himself submit a grievance to the Third Division of the NRAB. The governing laws of the Brotherhood provide a procedure by which the plaintiff could have requested the Grand Lodge of the Brotherhood to pursue his grievance to a final and binding determination before an Adjustment Board after it was denied by REA Express. This court therefore adheres to the firmly established rule that remedies within the union, when available, as here, are to be pursued as a prerequisite to relief in the federal

courts. The rule was recognized in Neal v. System Board of Adjustment (Missouri Pacific R.), *supra*, at 727 of 348 F.2d; Steele v. Louisville & N. R. R. Co., 323 U.S. 192 at 207, 65 S.Ct. 226, 89 L.Ed. 173 (1944); and Tunstall v. Brotherhood of Locomotive Firemen, *supra*, at 213–214 of 323 U.S., 65 S.Ct. 235, 89 L.Ed. 187.

Accordingly, since plaintiff has failed to pursue his administrative remedies to a final determination and since there is no indication that consolidation of positions was other than in strict accordance with the provisions of the collective bargaining agreement between defendants, this court grants summary judgment to the defendants, and dismisses plaintiff's complaint, without prejudice, and each party shall bear their own costs. In the event it becomes necessary after plaintiff has fully pursued his administrative remedies for this action to be reinstated on the docket, it may be done after notice and without payment of additional filing fees.