Walter R. REED, et al.,
Plaintiffs-Appellants,

v.

NATIONAL AIR LINES, INC., et al.,
Defendants-Appellees.

No. 74–2662.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1975.

Richard L. Horn, Miami, Fla., for plaintiffs-appellants.

William B. Killian, Miami, Fla., for National.

Allan Greenfield, Miami, Fla., and Asher W. Schwartz, New York City, for FEIA.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Reed, Blackett and Moseley brought suit under 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1337 for an alleged violation of the Railway Labor Act (RLA), as amended, 45 U.S.C.A. §§ 151–188. The district court held that it did not have jurisdiction because plaintiffs' cause was a "minor dispute" under the RLA for which exclusive jurisdiction vests in the Flight Engineer Systems Adjustment Board of defendant National Air Lines (NAL). Assuming jurisdiction, the district court held *inter alia* that plaintiffs' claim was barred by laches. We hold that a minor dispute exists and therefore affirm the district court's dismissal.

On July 30, 1968, Reed, Blackett, Moseley and one Stockwell were accepted for NAL's flight-engineer training class scheduled to begin on September 9th of that year. In late August the class was cancelled but plaintiffs and Stockwell were told that because NAL felt a moral commitment to them, they could have employment as mechanics, "until such time as NAL could utilize them as flight engineers." The four men accepted mechanics' jobs in mid-September but Stockwell resigned about two weeks later.

Reed, Blackett and Moseley became members of the International Association of Machinists and Aerospace Workers (IAM). They were part of the nearly 1000 IAM members discharged *en masse* by NAL on January 21, 1969. The legal reverberations which resulted from this discharge have had the attention of this Court on three previous appeals. *National Airlines, Inc. v. International Ass'n of Machinists*, 5 Cir. 1969, 416 F.2d 998 (NAL I); *National Airlines, Inc. v. International Ass'n of Machinists*, 5 Cir. 1970, 430 F.2d 957 (NAL II), *cert. denied*, 1971, 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440; *National Airlines, Inc. v. International Ass'n of Machinists*, 5 Cir. 1973, 478 F.2d 1062 (NAL III).

In June, 1969, NAL held a flight engineer class. Plaintiffs sought admission into the class but it was denied them

because they were terminated employees. Stockwell was accepted into and completed the class.

In September, 1969, we held in *NAL I* that the mass discharge was a violation of the status quo required to be maintained by the carrier under the RLA once Section 6 notices had been served (45 U.S.C.A. § 156).[1]

Under Section 11 of the NAL–FEIA collective bargaining agreement, a flight engineer seniority roster is posted on January 1 and July 1 of each year. Plaintiffs were first listed on the roster effective July 1, 1970. It listed plaintiffs thirty-six numbers below Stockwell who, as noted previously, entered and completed the June, 1969, class which plaintiffs were not permitted to enter. Although any flight engineer who wishes to protest an omission or incorrect posting may do so within 60 days, no protest was made at any time by any of the plaintiffs under the contract.

On March 1, 1971, plaintiffs were furloughed by NAL, but Stockwell was not. Under Section 15 of the NAL–FEIA agreement any reduction in work force is in inverse order of seniority. Section 18 of the agreement provides for the establishment of a System Board of Adjustment "for the purpose of adjusting disputes or grievances which may arise under the terms of this agreement." Plaintiffs did not utilize this or any procedure to grieve their furlough.

Plaintiffs were recalled to work on May 14, 1973. However, in the interim they had not been idle. On December 14, 1971, they filed a Notice of Claim in the NAL–IAM suit which, at that time, was on remand under *NAL II* in order to resolve questions of relief for the discharged IAM members. NAL and IAM reached a settlement agreement in January, 1972, and a hearing was held on February 25, 1972, to present the agreement to the district court. At that time plaintiffs moved to intervene in the suit claiming, *inter alia*, that they were entitled to promotion as flight engineers retroactive to June, 1969, lost compensation as flight engineers, and promotion on the seniority list, in addition to any back pay claims as illegally discharged mechanics. The motion to intervene was granted, the claims were disallowed and, upon appeal, this Court stated:

. . . While these intervenors' claim that the settlement "releases NAL and IAM from all claims and matters arising out of the instant suit," the claims of the intervenors did not arise out of this suit, but merely in conjunction with the same factual occurrences which gave rise to this suit. In holding that these claims were not before it under the mandate of our National Airlines II order, the District Court could not have contemplated that this settlement would bar the independent claims these intervenors might have as flight engineers.

*NAL III*, 478 F.2d at 1067–68.

Not surprisingly, plaintiffs promptly filed their "independent claims," the denial of which precipitated this appeal.

At the threshold we must determine whether the dispute between the plaintiffs and NAL is "major" or "minor" in order to properly apply the provisions of the Railway Labor Act.

The Act does not use the terms "major" or "minor" dispute. Rather, it refers to "disputes concerning rates of pay, rules, or working conditions," and to "disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C.A. § 151a. The Supreme Court has categorized the former as major disputes and the latter as minor ones, *Elgin, Joliet & Eastern Railway Co. v. Burley*, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886.

1. The Act does not use the words "status quo". It provides that once § 6 notices are served "rates of pay, rules, or working conditions shall not be altered by the carrier" until the dispute is settled. 45 U.S.C.A. § 156.

*NAL I* explains that on October 31, 1968 NAL and IAM exchanged § 6 notices of desired changes in their collective bargaining agreement. Hence, the "status quo" with respect to that dispute had to be maintained.

■ A major dispute occurs when it involves the formation of collective bargaining agreements, or an attempt to change the terms of such agreements. It is future-directed: it seeks the acquisition of rights. *Id.* at 723, 65 S.Ct. 1282.

■ A minor dispute relates to the meaning or proper application of a particular provision of a collective bargaining agreement. It is concerned with "specific maladjustments of a detailed or individual quality." A minor dispute is past-directed: it seeks the recognition of rights claimed to have vested or accrued. *Id.* at 723–24, 65 S.Ct. 1282, 1290.

■ The distinction is crucial because the procedures to be followed to settle these disputes differ. *See generally Burley, supra,; Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 1969, 394 U.S. 369, 378, 89 S.Ct. 1109, 22 L.Ed.2d 344. Under § 2 Seventh (45 U.S.C.A. § 152) unless the provisions of § 6 are complied with, a carrier may not change the rates of pay, rules or working conditions of its employees. Section 6 requires thirty days written notice of the intended change followed by a conference between the parties. After notice has been given, "rates of pay, rules or working conditions shall not be altered by the carrier until the controversy has been finally acted upon." 45 U.S.C.A. § 156. This is the source of the "status quo" rule. *NAL I, supra,* 416 F.2d at 1001–02. The working conditions and practices referred to in Section 6 which must not be altered are the actual, objective ones, broadly conceived. *Detroit & Toledo Shore Line R. Co. v. United Transportation Union,* 1969, 396 U.S. 142, 153, 90 S.Ct. 294, 24 L.Ed.2d 325. They, of course, must have been in effect prior to the time the dispute arose and the working conditions and practices must be *involved in or related to that dispute.*

■ Under Section 204 of the RLA, 45 U.S.C.A. § 184, air carriers and their employees must establish boards of adjustment. Their jurisdiction is exclusive, *Andrews v. Louisville & Nashville Railroad Co.,* 1972, 406 U.S. 320, 322, 92 S.Ct. 1562, 32 L.Ed.2d 95; *Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.,* 1963, 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172, and the Act is not violated unless the board's decision is not followed, *International Ass'n of Machinists v. Central Airlines,* 1963, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67.

■ Plaintiffs argue that it was a work practice or rule of NAL that mechanics were entitled to enter the first flight engineer class held after they were employed and that this practice was altered when they were refused admission into the June, 1969, class because the dispute over which § 6 notices had been exchanged had not yet been resolved. They argue that the alteration violated § 6 of the Act.

That plaintiffs were hired as mechanics is not debatable and while plaintiffs may have had some reason to believe that they would be going into the next flight engineer class, it appears that there was no assurance by NAL of entry into a particular flight engineer class. Moreover, while NAL had selected some flight engineers out of the mechanics work class it was neither required by rule or practice to do so nor was it required to give mechanics a preference to those hired from other sources. Furthermore, there is no evidence that the selection of NAL mechanics for flight engineer classes was involved in or related to the National-Machinists dispute over which § 6 notices had been exchanged on October 31, 1968. Therefore, there was no § 6 violation of the Act.

■ Similarly, there was no violation of § 2 Seventh in conjunction with § 6. The district court concluded that this seniority dispute is one to be resolved by applying or interpreting the NAL–FEIA contract, *i. e.,* that it was a minor dispute. As we have stated, we agree with this conclusion. Therefore, § 6 notices did not have to be served.

■ Plaintiffs alternatively argue that "but for" the violation of the Act by

NAL's mass discharge of mechanics the plaintiffs would have been in the June 1969, class and are, therefore, entitled to judicial relief. But the RLA cannot be expanded under its major dispute provisions to encompass all consequential misfortunes that may occur but are not involved in or related to that (the mass discharge) dispute. We said as much in *NAL II*. The claims asserted are within the purview of the minor dispute provisions of the RLA.

Finally, plaintiffs broadly state that *United Industrial Workers v. Board of Trustees of Galveston Wharves*, 5 Cir. 1968, 400 F.2d 320, *cert. denied*, 1969, 395 U.S. 905, 89 S.Ct. 1747, 23 L.Ed.2d 219 (*Galveston Wharves III*); *Mungin v. Florida East Coast Ry. Co.*, 5 Cir. 1969, 416 F.2d 1169 and *NAL I, II* and *III* are "decisive" on the issue of jurisdiction. We disagree.

*Galveston Wharves III* stands for the propriety of an award of back pay as a sanction once a violation of the RLA has occurred. It was, of course, applicable to the nature of relief available to the IAM members who were wrongfully discharged. It does not stand for the proposition that a refusal to permit plaintiffs to enter the June, 1969, class is an independent violation of the Act.

In *Mungin* there was a complete abrogation of the collective bargaining agreement and a substitution of new working conditions, precisely what § 2 Seventh forbids without § 6 notice, conference and mediation. The suit was brought by individual members of the union because the union failed to represent them due to disloyalty, corruption or other influences. Under *Galveston Wharves III* the union members as a class were entitled to back pay and reinstatement and reconstruction, so far as practicable, of the status quo. This case is hardly a jurisdictional precedent for plaintiffs.

In *NAL I* the company altered a working condition—the employment of its machinists work force—after § 6 notices had been served to obtain amendments of the National-Machinists collective bargaining agreement, but before § 6 procedures had run their course. There was no work condition altered here.

*NAL II* and *III* dealt with the relief available to the discharged IAM members. *NAL III* specifically excluded plaintiffs' claims as not coming within the issues adjudicated in that major dispute.

■ The dispute *sub judice* is over the proper seniority of the three plaintiff flight engineers at National Air Lines. Their claims are individual ones. They seek the advancement of approximately 30 flight engineer positions on the seniority roster.[2] These rights, if they are entitled to them, vested or accrued in the past. What exists, therefore, is a minor dispute. As a result, the Systems Board of Adjustment has exclusive jurisdiction over this matter. It is that board which must determine the meaning or proper application of the NAL–FEIA collective bargaining agreement with respect to plaintiffs' claims.[3]

The judgment of the district court dismissing this action is

Affirmed.

**2.** Section 10 of the NAL–FEIA agreement provides that seniority of a flight engineer is based upon the length of service as a flight engineer with the company and that it begins to accrue from the date of assignment as a checked-out qualified Flight Engineer and continues to accrue during such period of service.

**3.** While we decide this case on the jurisdiction question, we also agree with the district court that plaintiffs were guilty of laches. Plaintiffs (1) did not complain when they were refused entry into the June, 1969 class; (2) did not attempt to enter the August, September or October, 1969, or January, 1970 classes; (3) did not protest their seniority position on the July 1, 1970 roster although required to do so; and (4) did not grieve their furlough in March, 1971. It was not until their attempted intervention in the NAL–IAM suit in December, 1971 that they first asserted their claims. Meanwhile, the interests of the flight engineers senior to the plaintiffs, and NAL's interest in maintaining morale, resolving disputes in their incipiency, and minimizing wage claims amounted to substantial prejudice.