**Russell HENNEBURY, Plaintiff,**

v.

**TRANSPORT WORKERS UNION OF AMERICA, LOCAL 507 and American Airlines, Inc., Defendants.**

**Civ. A. No. 77–1557–G.**

United States District Court, D. Massachusetts.

March 7, 1980.

Lawrence J. Ball, Boston, Mass., for plaintiff.

John C. Kane, Jr., Ropes & Gray, Boston, Mass., for American Airlines, Inc.

O'Donnell & Schwartz, New York City, for Transport Workers Union.

## MEMORANDUM AND ORDER

GARRITY, District Judge.

The defendant, American Airlines, has moved to dismiss this action in which the plaintiff, a former employee of American Airlines, brought suit against his employer and his union representative, Local 507, alleging wrongful discharge from employment. We received supporting and opposing memoranda and heard oral argument. For the reasons stated herein, American Airlines' motion to dismiss is denied.

On October 31, 1974 plaintiff was discharged from his job as ground serviceman, fueling aircraft for American Airlines. Ten days earlier he had been in an accident on the job, seriously injuring his leg and, he claims, disabling him until April of the following year. In his amended complaint plaintiff states that at the time of his discharge he was told by a representative of Local 507 that the union would represent him in opposing the discharge. He further claims that in reliance on the union's representation he decided not to present a grievance on his own behalf before the Systems Board of Adjustment.

Plaintiff brought suit for wrongful discharge in this court on June 1, 1977, more than two and a half years after his discharge. The defendant airline moved to dismiss primarily on two grounds: that the plaintiff had failed to exhaust his administrative remedies before the Board of Adjustment, which has exclusive jurisdiction over grievances under the bargaining agreement; and that in any event, the action should be barred by his lack of timeliness in bringing suit two and a half years after his discharge.

### Grievance Procedure

Labor relations in the airline industry are governed by the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.* Under the Act, and pursuant to the collective bargaining agreement between American Airlines and the union, disputes involving interpretation or application of the agreement are within the jurisdiction of a Systems General Board of Adjustment, 45 U.S.C. § 152, 184; Article 32, Agreement between American Airlines and the Transport Workers Union of America (Agreement). Arbitration of unsettled disputes is mandatory, 45 U.S.C. § 153 First (i), and the Adjustment Board's jurisdiction is exclusive—in the usual case the federal court's jurisdiction extends only to review of the Board's actions. *Andrews v. Louisville & Nashville R. R.,* 1972, 406 U.S. 320, 321, 92 S.Ct. 1562, 1563, 32 L.Ed.2d 95; 45 U.S.C. § 153 First (p), (q). Individual employees may press their grievances either through a union representative or on their own behalf. 45 U.S.C. §§ 153 First (j), 184; Article 32–I(b) of the Agreement.

These procedures should be contrasted with those available under the National Labor Relations Act (NLRA). The NLRA permits the parties to decide whether grievance procedures shall be exclusive or non-exclusive, and generally the union and the employer control the grievance process to the exclusion of an employee's *pro se* remedies. *See* 29 U.S.C. § 159; *Slagley v. Illinois Central R. R.*, 7 Cir. 1968, 397 F.2d 546, 551.

### Exhaustion of Contractual Remedies

■ In *Andrews v. Louisville & Nashville R. R.*, *supra,* the Supreme Court announced the rule that in labor relations subject to the Railway Labor Act, disputes arising from an employee's discharge must first be submitted for adjustment and arbitration to the Adjustment Board designated by the bargaining agreement.[1] The Board's jurisdiction is thus exclusive and primary. 406 U.S. at 325, 92 S.Ct. at 1565; *accord, Dorsey v. Chesapeake & Ohio Ry. Co.*, 4 Cir. 1973, 476 F.2d 243 (per curiam). Before an employee may seek court review of his discharge he must first exhaust his remedies under the grievance procedures. *de la Rosa Sanchez v. Eastern Airlines, Inc.*, 1 Cir. 1978, 574 F.2d 29, 32; *cf. Republic Steel Corp. v. Maddox*, 1965, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580.

■ The exhaustion of remedies doctrine has been a long-standing feature of labor law, but over time exceptions have been permitted. Principal among these, and the one here relied on by plaintiff, is the exception permitted where the complaint alleges a breach by the union of its duty of fair representation. If the union wrongfully refuses to process the employee's grievance,

he should not be denied a remedy merely because he failed to exhaust an administrative procedure arbitrarily foreclosed to him. *See Vaca v. Sipes*, 1966, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842; *Glover v. St. Louis-San Francisco Ry. Co.*, 1968, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519.[2] And even where the misconduct is solely that of the union, the employee will still be permitted to bring his court action directly against his employer. *Vaca v. Sipes, supra*, 386 U.S. at 185–86, 87 S.Ct. at 914–15.

■ The defendant airline opposes the application of such an exception to the instant case. As its first ground it argues that plaintiff's complaint fails to allege a breach of the duty of fair representation. Based on our reading of the complaint, however, we believe that plaintiff's amended complaint is sufficient in this regard to withstand the airline's motion to dismiss.

Construing the complaint liberally, as we must, *Conley v. Gibson*, 1957, 355 U.S. 41, 45–46, 48, 78 S.Ct. 99, 101–102, 103, 2 L.Ed.2d 80; *Czosek v. O'Mara*, 1969, 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21, we find that the plaintiff has set forth the basic allegations of union unfairness. He claims a union representative told him the union would represent him, that he relied on that representation, and that throughout the time allowed for adjustment he was incapacitated and the union knew of his incapacity. Having failed to bring his grievance before the Adjustment Board, the union could thus be held to a duty to inform the plaintiff, in order that he may preserve his rights to proceed *pro se* within the time allowed. *Cf. Harrison v. United Transpor-*

---

1. *Andrews* changed the law then prevailing under *Moore v. Illinois Central R. R.*, 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. *Moore* held that some employee suits, in that case a suit for wrongful discharge, could be brought directly in the state or federal court under a theory of breach of contract. *Andrews* overruled *Moore* in holding that, since the source of the right not to be discharged is the collective bargaining agreement, the discharged employee must follow the grievance procedure set forth in the Railway Labor Act. As will be noted below, in many cases after *Andrews* the precise question presented is whether the right asserted has its source in the collective bargaining agreement.

2. The Supreme Court in *Glover* described three situations in which an employee should be permitted to bring suit without first exhausting his contractual remedies: (1) when the employer repudiates the grievance machinery; (2) when the union breaches its duty of fair representation; and (3) where resort to the administrative process would be futile. 393 U.S. at 329–31, 89 S.Ct. at 551 52.

*tation Union*, 4 Cir. 1975, 530 F.2d 558, 561–62, *cert. denied*, 1976, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203; *Schum v. South Buffalo Ry.*, 2 Cir. 1974, 496 F.2d 328, 330–31.

The defendant airline proposes a second, more substantial, ground for opposing an exception to the rule of exhaustion in this case. It argues that even if the complaint does contain sufficient allegations of union unfairness, the reasons for permitting the exception in cases under the National Labor Relations Act have no application to cases brought under the Railway Labor Act.

As explained by the Court in *Vaca v. Sipes, supra*, the primary justification for the unfair representation exception lies in the special nature of the collective bargaining system under the National Labor Relations Act, 29 U.S.C. § 185. Because the NLRA permits the union to devise and often control the contractual remedies, an employee would be remediless if he were not permitted to bypass grievance procedures whenever his union unfairly excluded him from them.

The defendant airline here proposes to distinguish the NLRA remedies from the arbitration procedures under the Railway Labor Act. The RLA permits an employee to seek redress either through his union representative or on his own behalf. 45 U.S.C. §§ 153 First (j), 184. An employee faced with a union's wrongful refusal to represent him may independently pursue his contract and administrative remedies according to the terms of the collective bargaining agreement. *Slagley v. Illinois Central R. R., supra*, at 551. Only where, for example, the union and the employer have colluded to deny the employee his fair representation would the circumstances justify an exception to the exhaustion rule in order to preserve, as the Court did in the NLRA context, the employee's opportunity effectively to present his grievances.

Hennebury has alleged wrongdoing only by the union because it failed to act on his grievance. That alone, argues the airline, would not have prevented him from independently bringing a grievance before the Adjustment Board once he realized his un-

ion would not. The defendant thus suggests that if we now allow Hennebury to bring suit simply because he has alleged unfair representation, we will make meaningless the administrative procedures that Congress decided should be a mandatory feature of the Railway Labor Act. *See Andrews v. Louisville & Nashville R.R. Co., supra*, 406 U.S. at 323, 92 S.Ct. at 1564, which distinguishes the compulsory character of the administrative remedy provided by the RLA from the voluntary, contractual undertaking permitted the parties under the NLRA.

Defendant cites numerous and persuasive authorities in support of this interpretation of the Railway Labor Act. In *Harrison v. United Transportation Union, supra*, for example, a discharged railroad employee brought suit against both his union and his employer, alleging an unlawful conspiracy in handling the appeal of his grievance. For reasons never fully explained in the court's opinion, the union had decided not to process Harrison's appeal further, but failed to notify him before the time to appeal had lapsed. At trial, the district court directed a verdict for the employer, finding insufficient evidence to support the allegation of a civil conspiracy. Harrison's surviving cause of action was against the union only. The Court of Appeals held that because the union's failure to present Harrison's grievance to the Adjustment Board had extinguished his "exclusive remedy" against his employer, Harrison's action against the union could include the full compensatory damages arising out of his loss of earnings. Having thus held the union to full compensation of the employee's loss, the court found no reason to "stretch the statute to permit the employee's maintenance of an original cause of action against the railroad." 530 F.2d at 563.

The *Harrison* decision turned principally upon the question of whether an employee could recover from the union the lost value of his right to enforce a claim against his employer. American Airlines argues that there is implicit in the *Harrison* holding the rule that, unless it can be shown that the employer was complicitous in the unfair representation, the employee's remedies lie

first, and exclusively, with the Adjustment Board. Thereafter he may seek review of the award in district court or begin a separate court action against only the union for the breach of its duty of fair representation. Thus the failure to exhaust the administrative remedies will, in every case, extinguish his claim against the employer.

Plaintiff, on the other hand, relies on *Schum v. South Buffalo Ry., supra,* whose facts resemble those in the case at bar. After his discharge from the defendant railroad, Schum contacted his union representative who assured him the union would process his grievance through the proper administrative channels. The union made no effort to live up to its representation, the limitation period lapsed, and Schum was left without further administrative remedies. Thereafter he brought suit in federal court against his employer and the union.

The railroad prevailed in dismissing the suit on the ground that Schum had failed to exhaust his administrative remedies, but the Second Circuit Court of Appeals reversed. This case was a proper one, the appeals court held, for applying the *Vaca* exception to the general rule of exhaustion. The employee had stated a cause of action for unfair representation; under the circumstances, he should not be denied "his day in court against his employer because his union failed to provide him with fair representation." 496 F.2d at 332. The employee's right under the Railway Labor Act to present an appeal on his own behalf was not, in the court's view, a distinction justifying dismissal of the employee's action. In practice, the court explained, such a right is in some ways meaningless:

> As a general rule, grievances do not succeed without the full support of the union. Normally employees do not have the expertise, knowledge or experience to interpret the complicated substantive and procedural provisions of a collective bargaining agreement. In addition, specialized skill and insight are required at the higher levels of the grievance procedures to investigate and marshall the relevant facts and law, to prepare adequate petitions and briefs, to comply with the intricate limitations periods common to all

labor contracts, and to present persuasive arguments to the board of arbitration. *Id.* at 331.

The *Schum* holding has been criticized and distinguished by some courts for various reasons. *Harrison* has already been noted. In that case the court was of the opinion that *Schum* was "inconsistent" with the theory and purpose of the Railway Labor Act. In view of its holding, however, we think the Fourth Circuit's decision in *Harrison* to accept or reject *Schum* was for the most part immaterial. *Harrison* held that an employee whose contractual remedies were extinguished by the union misconduct could be made whole by suing his union for the value of the lost right of enforcement. The rule having thus been stated, it was no longer necessary for the plaintiff employee to invoke the *Schum* exception or for the Fourth Circuit to distinguish it. Accordingly *Schum* could be freely distinguished; the court had no reason to accord Harrison the additional remedy permitted by *Schum* of a direct action against the railroad.

The defendant also cites extensively from the case of *Hill v. Southern Ry. Co.,* W.D.N.C.1975, 402 F.Supp. 414, which presents one of the more comprehensive critiques of *Schum.* The court's opinion in that case relies on many of the cases raised here by American Airlines, and so we have reviewed carefully those cases and the *Hill* court's understanding of them. Here again we conclude that for the purposes of our own analysis, *Hill* does not defeat the plaintiff's position or that of the Second Circuit in *Schum.*

Proceeding under the Railway Labor Act, the plaintiff employee in *Hill* invoked the unfair representation exception to the rule of exhaustion, relying on the holding in *Schum.* The district court doubted that on the facts presented Hill could successfully argue his union had not fairly represented him—the record showed the union had represented him through three levels of the administrative process and had ended its representation only when Hill demanded to proceed in another forum. 402 F.Supp. at 418. But since the question of the *Schum*

exception had been raised by the plaintiff, the court went on to consider and reject *Schum* as the rule to be followed in that district. To permit an exception to an exclusive remedy, the court concluded, would be a contradiction in terms. 402 F.Supp. at 418.

In support of its holding the *Hill* court relied on two circuit court opinions in which suits by railroad employees who had failed to exhaust their contractual remedies were dismissed. While both cases had at issue certain allegations that the plaintiffs hoped would excuse them from first submitting their cases to an adjustment board, in each instance the employee's reason for not exhausting the administrative procedures differed materially from the reasons presented in the *Schum* case and in the case at bar.

In the first case, *Dorsey v. Chesapeake and Ohio Ry.*, 4 Cir. 1973, 476 F.2d 243, the plaintiff alleged constitutional violations by the employer in conspiracy with other named defendants. Plaintiff had not submitted his grievance to the adjustment board because he believed that his constitutional claim fell outside the adjustment board's subject matter jurisdiction. After the action was brought, however, the Supreme Court decided *Andrews v. Louisville & Nashville Ry.*, which, we have noted *ante*, overruled the prevailing rule of law to hold that, even if an employee's grievance sounds in tort, so long as it implicates in any way the collective bargaining agreement it should be subjected first to administrative review according to the parties' bargaining agreement. Applying the new standard announced in *Andrews*, the *Dorsey* court held that the employee must submit even his constitutional claim to the adjustment board before seeking court review.

The *Dorsey* decision might fairly be read to restate the general rule that contractual remedies must first be exhausted. But its precise holding serves only to expand the class of grievances subject to this rule to include Dorsey's particular claim that he was denied due process at the hearing on his discharge. At issue for the Court of Appeals was only the effect of the new *Andrews* decision upon an action that had been properly begun in federal court under the pre-*Andrews* state of the law. No issue of union representation was presented and the only misconduct alleged was that of the employer.

The other case relied upon by the *Hill* court, *Haney v. Chesapeake and Ohio Ry.*, D.C. Cir. 1974, 162 U.S.App.D.C. 254, 498 F.2d 987, also involved application of the new *Andrews* rule to a grievance that, under the pre-*Andrews* rules, the plaintiff would have been allowed to bring directly to federal court. The plaintiff in *Haney* had included among her grievances an allegation of union non-feasance, which allegation she believed would be futile to bring before the adjustment board because it was composed of an equal number of union and management representatives. The alleged non-feasance was in the negotiation of an implementing agreement with the railroad; in no way did it relate to non-feasance by the union in processing her grievance. In fact, plaintiff had not even approached the union with her complaint, believing the pre-*Andrews* rule to govern the procedure in her case.

The *Haney* case can be read no more broadly than to hold that *Andrews* shall apply retroactively. Haney made an issue of the failed negotiations only to suggest that her case would deadlock in the adjustment board because the board was composed half of union representatives—the same parties she had charged with non-feasance. The court found her theory plausible but still too speculative to permit her to bypass the administrative procedure now mandated by *Andrews*. Her speculation about a deadlock could be amply tested, the court noted, on a review of the record of the adjustment board's deliberations.[3]

---

**3.** The *Hill* court (as well as the defendant American Airlines in this action) further relied on *Sensabaugh v. Ry. Express Agency of Virginia*, W.D.Va.1972, 348 F.Supp. 1398. That case is similar to *Haney* in that plaintiff argued

that his resort to the administrative procedure would be futile because the adjustment board was made up of the very parties against whom his complaint was directed. The court held that was not a sufficient reason to bypass the

The defendant American Airlines cites additional cases in support of its position, none of which persuades us that *Schum*, the case most closely analogous to the case at bar, was wrongly decided. *See, e. g., Conrad v. Delta Airlines*, 7 Cir. 1974, 494 F.2d 914 (plaintiff would have been permitted to circumvent adjustment board had he successfully demonstrated futility of administrative remedy) and *Goglowski v. Penn. Central Transportation Corp.*, W.D.Pa. 1976, 423 F.Supp. 901 (no attempt to use internal remedies nor showing why these would be futile).

At best our examination of these cases and other convinces us only that we can avail ourselves of no black letter rule in this case. Neither party challenges the exception as stated in *Vaca v. Sipes*. Both agree that in an NLRA related dispute an employee who alleges unfair representation by his union may proceed directly against his employer in state or federal court without first exhausting his contractual remedies. The defendant airline here argues only that such an exception is unnecessary under the Railway Labor Act and if permitted would frustrate the rule of exhaustion explicitly reaffirmed and expanded by the Court in *Andrews*.

The defendant bases its argument on the differences in operation and effect between the NLRA and the RLA and on the circumstances of this case. It emphasizes the following points: (1) Congress made the arbitration remedy mandatory only in the RLA—the NLRA permits non-exclusive and non-binding arbitration at the option of the parties. *See Slagley v. Illinois Central R.R.*, *supra*, 397 F.2d at 550–51. (2) Hennebury,

as have all RLA covered employees, had the opportunity to present his own grievance to the Adjustment Board without relying on union representation. (3) To the extent *Harrison* states the law, an employee whose rights against his employer are extinguished by his union's failure to represent him is not remediless; he may still recover from the union the lost value of his right of enforcement. (4) Hennebury's complaint contains no allegation of misconduct or collusion on the part of the employer in the union's breach of the duty of fair representation.[4]

We have considered carefully these four arguments and the cases offered in support of the defendant's position. It is our opinion, however, that under the circumstances here presented the conclusion reached by the Second Circuit in *Schum* is still the correct one.

We begin our analysis by noting the traditional supervisory jurisdiction of the federal courts over disputes between individual employees and their statutory representatives. *Vaca v. Sipes, supra*, 386 U.S. 183, 87 S.Ct. 913. While judicial policy in the first instance is to encourage parties to settle their differences according to the terms of their collective bargaining agreement, that policy cannot be given effect where one party fails to cooperate. *See Steelworkers v. American Steel Mfg. Co.*, 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403. In that case our bias will naturally be to preserve an employee's remedy wherever the circumstances might otherwise leave him remediless. Accordingly, while we acknowledge the apparent differences in the administrative practice under the

internal grievance procedures. Unlike the facts in the case before us, in *Sensabaugh* the union had declined to represent the employee at the local level but had so notified him. Thereafter the plaintiff failed to request representation at the Special Board of Adjustment or to pursue his own grievance at another level.

4. The defendant admits that where the plaintiff can show that both the employer and the union were responsible for the breach of the duty owed the employee a different case is presented. There the cause of action against the employer is broader than just the breach of the collective bargaining agreement; and arguably

outside the adjustment board's exclusive jurisdiction. *Cf. Glover v. St. Louis-San Francisco Ry.*, 1969, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519. At least one court, in dicta, has recently interpreted *Glover* broadly to hold that in an action under the RLA "an aggrieved employee has the right to bypass the adjustment board and bring a wrongful discharge action in district court when his union is guilty of a breach of the duty of fair representation." *Franklin v. So. Pacific Transp. Co.*, 9 Cir. 1979, 593 F.2d 899. Since the opinion in *Franklin* is somewhat summary and the facts presented are sufficiently distinct, we do not rely on it in reaching our decision here.

NLRA and the RLA, we do not think those differences, as a practical matter, justify denying the RLA employee the right enjoyed by his NLRA counterpart to proceed directly against the employer.

The defendant, we think, places too much reliance on Hennebury's right to proceed on his own behalf once he realized his union would not represent him. The agreement between the union and American Airlines permits the employee only seven days in which to appeal his dismissal. Article 30(a) of the Agreement. If no appeal is presented, the decision of the employer is final and binding. Article 31(f) of the Agreement. Hennebury's decision to request union representation and thereafter to rely on that representation does not seem unjustified, especially at a time when he was allegedly disabled. In this case seven days was simply too short a period of time, in our view, to expect Hennebury to investigate and confirm his union's true intentions and then to take steps to present his grievance and preserve his rights to appeal. And we believe that in any event, as suggested by the court in *Schum*, the *pro se* right may well be meaningless for an employee who does not possess the skills and insights of the experienced union representative. 496 F.2d 331.

Nor are we convinced that whatever rights might flow from Hennebury's claim of wrongful discharge may still be vindicated through an action against his union to recover the value of his lost right of enforcement.[5] The Fourth Circuit's opinion to that effect in *Harrison* appears to be in conflict with the Supreme Court's prior holding in *Czosek v. O'Mara*, 1969, 397 U.S. 27, 90 S.Ct. 770, 25 L.Ed.2d 21. *Czosek* limits the union's liability in employee suits to damages actually flowing from its own conduct. Thus, a union that refused to process a discharge grievance but did not itself participate in the wrongful discharge by the employer can be held liable only for the added expense and difficulty it caused the employee in recovering from the employer. 397 U.S. at 29, 90 S.Ct. at 773. *See*

*also Harrison v. United Transportation Union, supra*, 530 F.2d at 565 (Winter, J., dissenting). This rule limiting the union's liability seems also to be the rule now followed in the First Circuit, *see Soto Segarra v. Sea-Land Service, Inc.*, 1 Cir. 1978, 581 F.2d 291, 297–98; *de Arroyo v. Sindicato de Trabajadores Packinghouse Co., AFL–CIO*, 1 Cir. 1970, 425 F.2d 281, 289–90, cert. denied sub nom. *Puerto Rico Tel. Co. v. Figueroa de Arroyo*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114, and the rule still favored by the Supreme Court. *See International Brotherhood of Elec. Workers v. Foust*, 1979, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). In *Foust* the Court held that the Railway Labor Act does not permit recovery of punitive damages from a union that breached its duty of fair representation. In so holding the Court relied in part on the compensation principles established in *Czosek v. O'Mara* and overruled *Harrison* to the extent that *Harrison* awarded the employee punitive damages.

For the reasons stated, we therefore hold that the exception to the rule of exhaustion formulated by the Court in *Vaca v. Sipes* applies with equal force to employee suits brought under the Railway Labor Act. The plaintiff, Hennebury, has made a colorable allegation of unfairness in his union's representation; accordingly we have jurisdiction over his suit for wrongful discharge despite his failure first to exhaust his contractual remedies under the terms of his collective bargaining agreement and the provisions of the RLA.

### Statute of Limitations

The question next presented is whether plaintiff brought his action within the applicable period of limitation. Hennebury received notice of his dismissal on October 21, 1974 and was discharged on October 27, 1974; his complaint was filed in this court on June 1, 1977, approximately two and a half years later.

In *de Arroyo v. Sindicato de Trabajadores Packing, AFL–CIO, supra*, the First Circuit

---

**5.** It should be noted that although the Union was named a defendant along with the employer, American Airlines, and has answered the complaint, it did not appear or file memoranda either on the motion to dismiss or plaintiff's motion to amend the complaint.

Court of Appeals analyzed the choice of limitation periods in an employee's suit brought under the National Labor Relations Act against the union and his employer. Plaintiff in that case had alleged a breach by the union of its duty of fair representation and was permitted to proceed against his employer under the *Vaca* exception to the exhaustion of remedies requirement. The court adopted a tort characterization for the unfair representation claim and accordingly held the employee's action was barred by Puerto Rico's one year statute of limitation on tort actions. Although the *de Arroyo* opinion construed provisions of the NLRA, a related but not identical statute to the RLA provisions here in question, the First Circuit's approach to analyzing the choice of limitation period has clear application to Hennebury's claim under the RLA.

The court in *de Arroyo* looked first for an express limitation period in the federal statute, but found none. Accordingly it followed the rule stated by the Supreme Court in *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) AFL–CIO v. Hoosier Corp.*, 1966, 383 U.S. 696, 701–05, 86 S.Ct. 1107, 1110–1113, 16 L.Ed.2d 192, that suits brought under § 301 of the NLRA should be governed by the state statute of limitations rather than an implied federal limitation period. 425 F.2d at 285. In the case at bar, the defendant American Airlines seeks to distinguish the instant case from *de Arroyo* by identifying § 153 First (r) of the RLA as the Act's express statement of the period of limitation. Section 153 First (r) provides:

> All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.

■ Section 153 First (r), however, only sets the time limit for challenging a decision by the Board of Adjustment. It does not apply to the situation here presented of an employee who failed, for whatever reason, to bring his grievance before the Board of Adjustment in the first place. The defendant therefore proposes that we derive a time limit for this case by extrapolating from the time it would have taken the Board to reach a decision on the dispute had Hennebury presented his grievance in a timely fashion. Given the three months it would normally take for the Board to reach its decision, if Hennebury had properly exhausted his contractual remedy, his time for appeal would have run out two years and three months after his discharge—three months short of the date he actually filed suit in this case.

Although we share the defendant's interest in encouraging the prompt and orderly settlement of disputes in compliance with the RLA, neither the language of the Act nor the decision of the First Circuit in *de Arroyo* compels the particular construction of the Act that the defendant proposes. We must therefore look outside the Act to find the proper period of limitation.

It is true that invoking a state statute of limitation may in some cases allow the employee who does not exhaust his contractual remedy a longer period of limitation than that allowed an employee who faithfully conforms to the administrative procedures. But the reason for permitting such a result is the same that moved the Court in *Vaca* to create an exception to the traditional exhaustion of remedies doctrine. Hennebury claims he attempted to grieve his discharge through the proper administrative procedures; but for the union's alleged misconduct he might have been in compliance with the express provisions of the Act. Just as the union's alleged unfair representation excuses an employee from first exhausting his administrative remedies, so should it excuse him from compliance with any time limits set up under that administrative process.[6] This proposition finds support in

6. In our opinion, such a holding will not have the effect of encouraging employees to circumvent the administrative process. To take advantage of this exception an employee must have made a colorable claim of union unfairness. Viewing Hennebury's pleadings on a motion to dismiss we are satisfied that, as a preliminary matter, he is entitled to be excused from strict compliance with the grievance procedures.

the opinion of the Court of Appeals in *de Arroyo*:

> [S]ince *Vaca v. Sipes* established that federal labor policy does not require that individual suits be preempted simply because the NLRB might also be able to prosecute unions for such conduct, we see no reason why such private litigation *must* be limited by the same period as the NLRB is. By giving individual employees a period longer than the NLRB's six months, we encourage initial recourse to the Board without precluding a subsequent civil suit if the Board refuses to pursue the matter for the individual employee. Moreover, the individual suit is still analogous to an ordinary tort action regardless of the Board's concurrent jurisdiction.

*de Arroyo, supra,* at 287 (emphasis in original).

We conclude, therefore, that § 153 First (r) does not state an express limitation period in the case of a grievance never submitted to the Board of Adjustment because of alleged union misconduct. Moreover, where an employee fairly alleges a breach of the union's duty of fair representation, and the breach was the cause of the employee's failure timely to act, he will not be held to strict compliance with whatever time periods may govern the grievance machinery under the RLA or the collective bargaining agreement. Thus we are left to follow the command of *Hoosier, supra,* that in the absence of an express statutory provision the suit will be governed by the state statute of limitation rather than some period implied from the federal statute.

As to the suit against the union, in the First Circuit such actions are characterized as tort actions and are governed by the state statute of limitations for torts—in Massachusetts, three years. M.G.L. c. 260, § 2A. *de Arroyo, supra,* at 287. Cf. *Sanderson v. Ford Motor Co.,* 5 Cir. 1973, 483 F.2d 102, 114 (characterized as tort); *Abrams v. Carrier Corp.,* 2 Cir. 1970, 434 F.2d 1234, *cert. denied,* 1971, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (characterized as contract).

In this case, however, Hennebury's principal interest is in his action against the employer, an action which, because of the alleged unfair representation of the union, he has been allowed to maintain despite his failure to exhaust his contractual remedies. It is not clear whether the tort characterization of the action against the union thus carries over to the action for wrongful discharge against the employer. More likely the two actions are characterized differently (wrongful discharge sounds more nearly in contract) and should bear different statutes of limitations. This view is supported by *de Arroyo, supra,* at 287, and *Price v. So. Pacific Transp. Co.,* 9 Cir. 1978, 586 F.2d 750, 753. Which of the two state statutes of limitations should apply, that of contract (six years) or of tort (three years), need not be decided here. Even in light of the court's preference for a shorter period of limitation where the question of characterization is a close one, *de Arroyo, supra,* at 287, Hennebury's complaint, filed two and a half years after his discharge, falls well within the shortest of the possible limitation periods.

Thus, insofar as Hennebury's complaint is based on the alleged breach of his union's duty of fair representation, we hold it was timely filed under the state statute of limitations. One further question remains, however, on the issue of timeliness. Even if Hennebury's claim is not barred by § 153 First (r) and is timely under the state statute of limitations, it may be barred by laches, a question we cannot, in our view, resolve on the record presented by the motion to dismiss.

The record does not show, for example, when it was after his discharge that Hennebury requested his union to process his grievance. The collective bargaining agreement, Article 30(a), provides that an employee must appeal a dismissal within seven days of the date he receives notice. If

Hennebury did not request union representation on his appeal until more than seven days after discharge, both he and his union representative may have been barred from the start by the terms of the bargaining agreement; the question of whether or not his union failed to represent him would in effect be irrelevant. Nor does the record show when Hennebury first learned that the union had not processed his grievance, what steps he may have taken on his own behalf, how often he checked back with his union representative, or why he waited two and a half years before bringing suit in federal court. If his delay were unjustified, it may be that his action should be barred by the equitable doctrine of laches. *See Reed v. National Air Lines*, 5 Cir. 1975, 524 F.2d 456, n. 3.

We hold, therefore, that the defendant's motion to dismiss Hennebury's complaint is denied. Plaintiff, however, now carries the burden of showing that the circumstances of his case are in fact consistent with the policy underlying the *Schum* and *Vaca* exceptions. In deciding the motion to dismiss we have of course viewed this case in the light most favorable to the plaintiff. The court's attention and further inquiry will turn now, *inter alia*, to the reasonableness of Hennebury's reliance on the union's representation, his understanding of his rights under the bargaining agreement, possible justifications for the union's actions, and the extent to which the union's conduct was in fact the operative cause of Hennebury's failure to exhaust his contractual remedies.