Hazel O. HANEY, Appellant,

v.

CHESAPEAKE & OHIO RAILROAD COMPANY and Baltimore & Ohio Railroad Company.

No. 73-1328.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 25, 1974.

Decided April 10, 1974.

John H. Wilbur, Jacksonville, Fla., of the bar of the Supreme Court of Florida, pro hac vice, by special leave of Court with whom Frederick C. McAlpin, III, Washington, D. C., was on the brief for appellant. Marion Edwyn Harrison, Washington, D. C., also entered an appearance for appellant.

Albert W. Laisy, Baltimore, Md., for the bar of the Court of Appeals of Maryland, pro hac vice, by special leave of Court, with whom Laidler B. Mackall, Washington, D. C., was on the brief, for appellees.

Before LEVENTHAL, MacKINNON and WILKEY, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant sued the Chesapeake & Ohio Railroad and the Baltimore & Ohio R.R. ("Railroads"), her former employers, to recover separation pay alleged to be due under a collective bargaining agreement. The District Court, relying upon Andrews v. Louisville & Nashville R.R., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), dismissed her complaint for lack of jurisdiction, in view of plaintiff's failure to utilize arbitration available under the collective bargaining agreement or the Railway Labor Act. Appellant asserts that this case is properly governed by the pre-*Andrews* law prevailing at the time she was separated and filed the complaint. The pre-*Andrews* doctrine, established by Moore v. Illinois Central R.R., 312 U.S. 630, 61 S. Ct. 754, 85 L.Ed. 1089 (1941), and followed in Condol v. Baltimore & Ohio R.

R., 91 U.S.App.D.C. 255, 256, 199 F.2d 400, 402 (1952), held that a railroad employee suing his employer for damages for wrongful discharge need not exhaust administrative remedies under the Railway Labor Act. Appellant urges that *Andrews,* which overruled *Moore,* should be applied only prospectively, in line with considerations set forth by the Supreme Court in the cases limiting retroactive effect of criminal procedure decisions. *E. g.,* Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Although our approach differs from that of the District Court, we affirm its judgment. We conclude that retroactive application of *Andrews* should not be withheld where, as here, the plaintiff is free to pursue administrative remedies.

I.

In Moore v. Illinois Central R.R., *supra,* the Supreme Court viewed the grievance adjustment procedures of the Railway Labor Act as an alternative to, and not a precondition of, an action under state law for wrongful discharge. Judicial relief under state law was available, however, only in a suit for damages and not in an action by the employee to compel reinstatement, as became clear from Slocum v. Delaware, L. & W. R.R., 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795 (1950).

The doctrine that state law governed an employee's claim for damages arising from a discharge was reaffirmed in Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953).[1] However, the rationale of *Moore* and *Koppal* was undermined by later decisions holding that federal substantive law applied to suits under collective bargaining agreements mandated by § 204 of the Railway Labor

---

1. *Koppal* involved an air carrier, to which many of the rail carrier provisions of the Railway Labor Act have been made applicable by amendments to the Act, codified at 45 U.S.C. §§ 181–188 (1970). That case held that a District Court should refuse to enter- tain an employee's suit for severance pay under its removal jurisdiction where the plaintiff had not complied with an applicable state law requirement of exhaustion of contract grievance procedures.

Act,[2] International Association of Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963), and § 301 of the Labor Management Relations Act, Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Their undercutting of the *Moore* doctrine was noted in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), which held that an employee must exhaust contract grievance procedures before suing under § 301 of the LMRA for breach of a collective bargaining agreement. The Court discerned in the federal labor law a strong policy favoring settlement of disputes by arbitration. As to the no-exhaustion rule applicable to the Railway Labor Act cases, the Court observed (p. 655, 85 S. Ct. p. 618):

> Federal jurisdiction in both *Moore* and *Koppal* was based on diversity; federal law was not thought to apply merely by reason of the fact that the collective bargaining agreements were subject to the Railway Labor Act. Since that time the Court has made it clear that substantive federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act, International Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, [83 S.Ct. 956, 10 L.Ed.2d 67], and by § 301(a) of the LMRA, Textile Workers v. Lincoln Mills, 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]. Thus a major underpin-

ning for the continued validity of the *Moore* case in the field of the Railway Labor Act, and more importantly in the present context, for the extension of its rationale to suits under § 301(a) of the LMRA, has been removed.

The *Maddox* Court, however, declined to overrule *Moore*, but stated that reconsideration should await a case in which "distinctive features of the administrative remedies provided by . . . [the Railway Labor] Act can be appraised in context, *e. g.*, the make-up of the Adjustment Board, the scope of review from monetary awards, and the ability of the Board to give the same remedies as could be obtained by court suit." 379 U.S. at 657 n. 14, 85 S.Ct. at 619.

Notwithstanding *Maddox*, the no-exhaustion rule of *Moore* was applied in Walker v. Southern Railway Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966), another wrongful discharge case. The Court noted that adjustment procedures under the Railway Labor Act had involved long delays and had offered employees no right to seek judicial review of awards. While new legislation had revised the procedures in 1966 to expedite awards and expand employees' right of review, the petitioner in *Walker* could not take advantage of the modifications, and the Court accordingly declined to require exhaustion "in his case." 385 U.S. at 196, 87 S.Ct. 365.[3]

---

2. Section 204 of the Act, 45 U.S.C. § 184, requires carriers and their employees to establish boards for the adjustment of grievances having jurisdiction not exceeding that of the adjustment boards for rail carriers and employees authorized by 45 U.S.C. § 153 Second.

3. The Railroads argue that *Walker* in effect overruled *Moore* with respect to all claims which could be presented as grievances under the modified procedures established by the 1966 amendments to the Railway Labor Act. Decisions in other circuits which the Railroads cite do not squarely support the asserted proposition, but several circuits expressed the view that the 1966 amendments sufficiently corrected the procedural deficiencies to which the Supreme Court re-

ferred, to make the *Moore* rule inapplicable. *See* Slagley v. Illinois Central R.R., 397 F.2d 546, 549 n. 3 (7th Cir. 1968); Ferguson v. Seaboard Airline R. R., 400 F.2d 473, 474 (5th Cir. 1968); Belanger v. New York Central R.R., 384 F.2d 35, 36 (6th Cir. 1967); Sullivan v. Pacific & Arctic Rwy. & Nav. Co., 439 F.2d 267 (9th Cir. 1971) (holding that contract grievances procedures avoided inadequacies described in *Walker*); Parsons v. Norfolk & Western R. R., 442 F.2d 1075 (4th Cir. 1971) (holding alternatively that *Moore* was inapplicable where employee sought adjustment of compensation while continuing employment rather than damages arising from discharge). None of these decisions were cited by the Supreme Court in its *Andrews* opinion.

■ Despite the signals that its foundation might be weakening, the no-exhaustion rule of *Moore* may have induced reliance by aggrieved employees as late as the *Andrews* decision, thus giving rise to a claim of surprise by the old rule's extinction. *Andrews* itself was a retroactive application to the petitioner himself, but that is typically the situation in any decision that overrules prior precedents, even though the decision is otherwise given only prospective effect.[4] In *Andrews,* the Supreme Court did not discuss the problem of upsetting reliance upon the *Moore* rule, but the petitioner was left with an administrative remedy. The Court was thus able to overrule *Moore* without extinguishing the employee's opportunity for relief, in contrast to *Walker,* where the specter of injustice to the aggrieved employee led the Court to back away from overruling *Moore.* We believe that *Andrews,* read in the foregoing context, permits us to consider a claim that its retroactive effect should be withheld where necessary to avoid the kind of injustice produced by leaving an employee who justifiably relied upon the *Moore* rule without a remedy.

No such injustice is, however, presented by the case at bar. Two administrative tribunals have jurisdiction over the kind of claim she presents—a Special Board of Adjustment established under the collective bargaining agreement between the Railroads and the union which represented appellant while she was employed, and a division of the National Railway Adjustment Board, established under the Railway Labor Act. In either forum, the Railroads may present the same defenses which would be available in a judicial action.

■ One defense that has been proffered is that appellant's claim was not presented to the Railroads within the time prescribed by the collective bargaining agreement. We pass no judgment on the merits of that defense, beyond saying that it may be presented to the administrative tribunal on the same basis that it would have been available as a defense if the action were continued in court. What we do maintain as a requirement is a point on which counsel for the Railroads has given us assurance at oral argument: that the Railroads will raise no claim of laches based on appellant's delay in taking her case before the administrative tribunal.[5]

Because application of *Andrews* works no hardship in the sense of leaving appellant without a remedy, we conclude that in light of the strong policy favoring resort to arbitration reaffirmed in that decision appellant should not be relieved of the exhaustion requirement.

## II.

■ Appellant contends that because of the nature of her claim for separation pay, her remedy before the administrative tribunal is not an effective one and urges us to apply the rule that exhaustion is not required where the administrative remedy is inadequate. *See, e. g.,* Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Order of Railway Conductors v. Swan, 329 U.S. 520, 67 S.Ct. 405, 91 L. Ed. 471 (1947).

The facts which underlie appellant's contention of inadequacy are these. Ap-

---

4. *See, e. g.,* Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (limiting retroactive effect of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (limiting retroactive effect of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967)).

5. If, contrary to the representations of counsel for the Railroads, appellant were to find herself barred from an administrative remedy by laches, her counsel may petition this court for a recall of its mandate. *See* Greater Boston Television Corp. v. F.C.C. (II), 149 U.S.App.D.C. 322, 330–331, 463 F.2d 268, 276–277 (1971).

pellant's job as a ticket agent was abolished in June, 1968, as part of a general work force reduction by the Railroads. Eventually the Railroads closed their Washington, D.C. office in 1970. At the time her job was abolished, there were no vacant positions for her at Washington, and she declined to accept work at the Baltimore, Maryland, office, thereby terminating her employment.

Her claim for separation pay is based, in part, on the following provision of a 1967 collective bargaining agreement between the Railroads and the union:

Any employee involved in or affected by the coordination provided for in . . . [this agreement] who is deprived of employment as a result of such coordination shall be accorded an allowance (hereinafter termed a coordination allowance). . . .

Section 1(d), Appendix A, Memorandum Agreement of December 2, 1965. A coordination is a "joint action by two or more carriers whereby they unify, consolidate, merge or pool" previously separate operations or services.[6]

The Railroad's answer to appellant is, in part, that the work force reduction in June, 1968, was necessitated by declining demand for rail passenger service, and was not part of a "coordination" as defined by the pertinent collective bargaining agreements.[7] The Railroads say that a coordination is usually accompanied by a separate agreement between the employer and the affected unions, known as an "implementing agreement," which specifically defines the rights of affected employees. Implementing agreements were made between the Railroads and the union representing appellant in both 1966 and 1967, but a separate agreement was not negotiated before the Railroads abolished appellant's position in June, 1968, and the Railroads

urge that the absence of such an agreement is dispositive of appellant's claim on the merits.

In rejoinder, appellant points to the following provision:

If any carrier shall rearrange or adjust its forces in anticipation of a coordination, with the purpose or effect of depriving an employee of benefits to which he should be entitled under this agreement as an employee immediately affected by a coordination, this agreement shall apply to such an employee as of the date when he is so affected.[8]

Appellant contends that her position was abolished "in anticipation of a coordination" and as evidence cites the fact that the Washington, D.C. ticket office of the Railroads was eventually closed, and that certain employees who lost their positions in 1970 were paid separation allowances.

We abstain from intimating any view of the validity of the foregoing arguments as they relate to the merits of appellant's claim. But we take note of appellant's contention that the exhaustion doctrine should be inapplicable because an adjustment board cannot be expected to deal adequately with her argument that the Railroads abolished her position "in anticipation of a coordination." That argument, she contends, can be taken as an assertion that the union failed to exercise diligence by recognizing the Railroad's anticipated coordination and demanding an implementation agreement to protect the employees. While the composition of an adjustment board—equal numbers of employer and union representatives, and a single "neutral" member available in case of deadlock—is designed to provide a fair forum for the ordinary grievance, the same composition, appellant says, makes

6. This definition of a coordination appears in § 2(a) of the Washington Agreement of 1936, an industry-wide collective bargaining agreement, incorporated by reference in the Memorandum Agreement of December 2, 1965.

7. The Railroads' other arguments against appellant's claim, going to the interpretation of the collective bargaining agreements, are not relevant here.

8. Section 12, Washington Agreement of 1936, *supra* note 6.

for an inadequate forum in which to present an argument that may be interpreted as a charge of union nonfeasance.

In urging that the administrative remedy is inadequate, appellant quarrels not merely with a retroactive application of *Andrews,* but with the exhaustion requirement itself. In effect, appellant would have us carve out an exception to *Andrews* whenever an aggrieved employee's prosecution of his claim runs the risk of making his union an adversary. Although the concern expressed by appellant is plausible,[9] we conclude that relieving her of the exhaustion requirement would open too large a hole in *Andrews,* and that the sound course is to require her to seek relief before the administrative tribunal, relying for further protection on the general doctrines of law permitting limited judicial surveillance in an action complaining of administrative abuse. In such an action, a court will have before it a record showing the adjustment board's response to the complainant's particular case. This avoids the difficulty of appraising the kind of assertions that appellant puts to us, assertions that are, however plausible, nevertheless speculative.

■■ Justice requires a fair tribunal, not one which is optimal from the point of view of a particular party. A change in jurisdiction which results in the transfer of claims from one forum to another is generally deemed to be a procedural change that can be given retroactive effect if the transferee forum has requisite qualities of fairness. Montana Power Co. v. FPC, 144 U.S. App.D.C. 263, 445 F.2d 739 (en banc, 1970), cert. denied, 400 U.S. 1013, 91 S. Ct. 566, 27 L.Ed.2d 627 (1971). This rule applies even when the transfer is from a judicial to an administrative tribunal. Crane v. Hahlo, 258 U.S. 142, 42 S.Ct. 214, 66 L.Ed. 514 (1922). Whether an adjustment board will give adequate consideration to appellant's particular claim is not an issue that should be prejudged before that tribunal has had an opportunity to act. The features of the adjustment board to which appellant has pointed establish that in light of its difference from a judicial forum, trial tactics may call for a different presentation to the board than appellant would make in court. These differences do not, however, establish inadequacy of the administrative remedy. *See* Drake Bakeries, Inc. v. American Bakery & Confectionery Workers, 370 U.S. 254, 266, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

### III.

A decision like *Andrews,* involving a matter that has been considered and reconsidered in light of reflection over the years, is not to be accorded a niggardly construction. Sound principles of judicial administration conjoined with the salient considerations discussed in that case make it appropriate to require appellant to pursue her grievance adjustment remedies either before a tribunal created by the collective bargaining agreement, or a division of the National Railway Adjustment Board. Appellant's claim that the Railroads abolished her position in anticipation of a coordination is an argument appropriate for the consideration of a specialized body, well-equipped to provide an understanding of conditions and practice in the industry and to achieve consistency in the disposition of grievances brought by similarly-situated employees.

Affirmed.

9. The Railroads, however, respond that a victory by appellant before the adjustment board might establish a precedent leading to recovery by many union members, and thus union representatives on a board might well be predisposed to rule in appellant's favor.