**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al., Plaintiffs,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

**Civ. A. No. 77–1333.**

United States District Court, District of Columbia.

Jan. 20, 1978.

---

Michael E. Abram, Cohen, Weiss & Simon, New York City, Donald J. Capuano, O'Donoghue & O'Donoghue, Washington, D. C., for plaintiffs.

Philip A. Lacovara, Jay Kelly Wright, Hughes, Hubbard & Reed, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WADDY, District Judge.

This is an action for a declaratory judgment and damages arising out of the Northwest Airlines, Inc. Pilots' Pension Plan, part of a collectively bargained agreement between the Air Line Pilots Association, International (ALPA) and Northwest Airlines, Inc. (Northwest). Plaintiffs are ten (10) Northwest pilots, on behalf of all others similarly situated, and their collective bargaining representative, ALPA. Northwest is the defendant.

Contemporaneously with the filing of the Complaint plaintiffs filed and served on defendant requests for discovery consisting of a First Set of Interrogatories and a First Request for Production of Documents.

This case is before the Court on Northwest's Motions to Dismiss for lack of jurisdiction over the subject matter, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and to Stay Discovery pending disposition of the Motion to Dismiss, and plaintiffs' oppositions thereto.

The plaintiffs have alleged in their Complaint that the defendant has violated the terms of the Northwest Airlines, Inc. Pilots' Pension Plan as Amended August 7, 1975. It is not disputed that the pension plan and amendments were collectively bargained between and agreed upon by the defendant and plaintiff Air Line Pilots Association pursuant to the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*

Until August 7, 1975 the pension plan consisted of two funds: Trust Fund "A", established to provide fixed retirement benefits, and Trust Fund "B", created as a hedge against inflation to provide variable benefits. In addition to Northwest's contributions to both Fund "A" and Fund "B", each pilot was permitted to make voluntary contributions to Fund "B" to be invested along with other contributions for his benefit.

The collectively bargained August 7, 1975 amendments to the pension plan abolished the variable benefits Fund "B" and replaced the two separate trust funds with a single fund, to which contributions are made exclusively by Northwest. Section 7.2 of the Amended Pension Plan provided that any pilot who had made optional contributions to Fund "B" could elect to have distributed to him the accrued value of those contributions. Alternatively, a pilot could leave the assets attributable to such optional contributions in the pension fund for distribution at the date of retirement in accordance with the variable benefits provision of the prior plan.

Distribution of the "B" Fund assets to those pilots who elected to "cash out" was made by Northwest beginning in November, 1975, three months after the operative date of the pension plan amendments. In accordance with section 7.2 of the plan the pilots' contributions were valued as of the date of the amendments, August 7, 1975. This Complaint seeks, *inter alia,* the interest on the accrued value of the optional contributions held in Fund "B" between August 7, 1975 and the actual date of disbursement of those monies to pilots electing to "cash out". Plaintiffs also seek as damages any profits which Northwest may have made through the use of the interest, punitive damages, and a declaration of the parties' rights under the Amended Pension Plan.

The Complaint alleges that Northwest's failure to pay interest on the "B" Fund disbursements violates the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381. Plaintiffs assert that this is an action under 29 U.S.C. §§ 1132(a)(2) and (a)(3) over which exclusive jurisdiction is conferred in the district courts by 29 U.S.C. § 1132(e)(1). It is their position that ERISA was intended to provide "ready access to the Federal courts." 29 U.S.C. § 1001(b).

Defendant's Motion to Dismiss raises the question of this Court's subject matter jurisdiction over this dispute in light of the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188. Northwest contends that although ERISA allows suits to recover pension benefits, it does not operate to divest an RLA arbitration panel of its exclusive jurisdiction to interpret collectively bargained agreements. Therefore, Northwest argues, this controversy is subject to the RLA's compulsory arbitration provisions, and this Court has no jurisdiction.

The Court agrees.

The RLA 1936 amendments extended the Act, except Section 3 (45 U.S.C. § 153), to interstate commercial air carriers such as defendant Northwest. 45 U.S.C. § 181, *International Association of Machinists, AFL–CIO v. Central Airlines, Inc.,* 372 U.S. 682, 685, 83 S.Ct. 756, 10 L.Ed.2d 67 (1963). Section 2 (45 U.S.C. § 152) requires all carriers and their employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions and to settle all disputes, whether arising out of the ap-

plication of such agreements or otherwise. Section 204 (45 U.S.C. § 184) of the RLA provides, *inter alia,* that disputes between carriers by air and their employees growing " . . . out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner . . . ; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board . . ." The statute also requires the parties to establish such boards of adjustment. The procedure so established by the statute constitutes compulsory arbitration and the resulting decisions are final and binding. *Cf. Walker v. Southern Ry.,* 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); *Brotherhood of Railroad Trainmen v. Chicago R. & I. R. R.,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957).

■ The parties agree that resolution of this dispute requires an interpretation and determination under section 7.2 of the Amended Pension Plan of whether Northwest is obliged to pay interest on Fund "B" assets which have been disbursed to its pilots after August 7, 1975. The parties have also agreed as part of their collectively bargained pension plan that, "[T]he Retirement Board shall hear all disputes arising out of the application and interpretation of the Plan, . . . ." Amended Pension Plan, section 9.3. The Retirement Board in this case constitutes the adjustment board mandated by the statute. Thus, under the RLA, inasmuch as the August 7, 1975 agreement is a collective bargaining agreement within the meaning of §§ 2 and 204 (45 U.S.C. §§ 152 and 184) of that Act, all disputes arising out of the application or interpretation of that pension plan must be submitted to the Retirement Board established by Northwest and ALPA pursuant to the provisions of the Act. *Central Airlines, supra, see Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), *Slocum v. Delaware, Lackawanna & Western R. R.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), *Haney v. Chesapeake & Ohio R. R.,* 162 U.S.App.D.C. 254, 498 F.2d 987 (1974).

Plaintiffs contend, however, that the ERISA policy favoring uniform federal decisions of pension disputes overrides both the mandatory arbitration provisions of the RLA and the parties own collectively bargained agreement to submit such disputes to their Retirement Board. In support they rely upon ERISA's civil enforcement provisions at section 502 of the Act (29 U.S.C. § 1132).

Plaintiffs seek, *inter alia,* a declaratory judgment. They claim exclusive federal jurisdiction under section 502(e)(1) of ERISA (29 U.S.C. § 1132(e)(1)) for civil enforcement of the pension plan under sections 502(a)(2) and 502(a)(3) (29 U.S.C. §§ 1132(a)(2) and 1132(a)(3)).

While it is well established that any court of the United States may render a declaratory judgment "[i]n a case of actual controversy within its jurisdiction . . .", 28 U.S.C. § 2201, neither section 502(a)(2) nor 502(a)(3) explicitly provides for a declaration of the parties' rights under the pension plan, nor for pre-emption of the RLA by ERISA.

There is language in ERISA's statement of policy indicative of the drafters' preference for "ready access" to the district courts. There is also section 514 of the Act (29 U.S.C. § 1144) which while expressly providing for the supersedure by ERISA of any and all *State laws* relating to employee benefit plans, includes the specific determination by Congress that the Act not be construed "to alter, amend, modify, invalidate, impair, or supersede *any law of the United States* . . . ." 29 U.S.C. § 1144(d) (emphasis supplied). Among the laws of the United States then in effect was the Railway Labor Act.

■ This Court's conclusion that ERISA was not intended to, and did not pre-empt the mandatory arbitration provisions of RLA is supported by the rationale of the recent case of *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223 (7th Cir. 1977), in which the Court held that since an interest in a mutual fund is a

"security", a union member's interest in a pension fund should also be considered a security within the definition of the Securities Act of 1933. The Court expressly rejected defendants' argument that ERISA has repealed the antifraud provisions of the 1933 and 1934 Securities Acts insofar as they apply to union pension funds. It stated:

> . . . [P]re-emption may only be declared in the face of an explicit repealer provision or the most cogent repugnancy between the securities and pension regulatory schemes. [citation omitted] *Daniel,* 561 F.2d 1223, 1246.

Finding neither triggering condition present, that court also relied upon ERISA's general savings clause at section 514(d) of the Act (29 U.S.C. § 1144(d)) which "by its own terms strongly suggests that pre-emption was not intended." *Daniel, supra,* at 1246–7. (*Cf. Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977), for the proposition that ERISA's section 514 does not pre-empt New Hampshire law regulating the contents of group health insurance policies, some of which are purchased by employee benefit plans covered by ERISA.)

■ Likewise this Court concludes that there is no explicit repealer provision or cogent repugnancy between the RLA and ERISA; that Section 514(d) of the Act (29 U.S.C. § 1144(d)) evinces that pre-emption was not intended by Congress; and that the imposition of Railway Labor Act compulsory arbitration does not upset the comprehensive legislative scheme of ERISA.

■ Plaintiffs have also opposed disposition of this Motion to Dismiss as premature since the parties have not yet engaged in pretrial discovery. They contend that defendant's motion is actually a motion under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss for failure to state a claim upon which relief can be granted, rather than a motion under Rule 12(b)(1) to dismiss for want of subject matter jurisdiction. If defendant's motion were made pursuant to Rule 12(b)(6), then the appended affidavits would require treatment of that motion as a motion for summary judgment under the terms of Rule 12(b), and plaintiffs would be entitled to engage in discovery.

However, plaintiffs' argument is without merit. Northwest's motion presents a single question of law which is properly disposed of without factual argument based upon discovery. Defendant's motion is pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and affidavits outside the pleadings are properly considered on such a motion. 2A Moore's Federal Practice ¶ 12.09.

Plaintiffs' discovery requests were made at the same time they filed their Complaint. They seek to discover matters relating to the substance of the Complaint, the issue of damages, and the class allegations of the Complaint. They have failed to demonstrate to this Court how the discovery they seek pertains to the jurisdictional issue raised by defendant's Motion to Dismiss.

Therefore, upon consideration of the Complaint, the motions, the memoranda of points and authorities in support thereof and in opposition thereto, the entire record herein, and the arguments of counsel for the parties at the hearing, and for the reasons stated herein, it is by the Court this 20th day of January, 1978,

ORDERED that defendant's Motion to Dismiss be, and the same hereby is, granted, and the Complaint is dismissed, and it is further

ORDERED that defendant's Motion to Stay Discovery be, and the same hereby is, denied as moot.

### ORDER

Upon consideration of defendant's Motion for Award of Costs wherein Northwest Airlines, Inc. seeks an award of reasonable costs, including attorney's fees, incurred in the defense of this action, the memoranda of points and authorities in support thereof and in opposition thereto, and the entire record herein, and

It appearing to the Court that Section 502(g) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

§ 1132(g), provides for the award of a reasonable attorney's fee and costs to either party to this action, within the discretion of the Court, and

It further appearing that although the Court previously granted defendant's Motion to Dismiss this action, and there being no evidence that plaintiffs filed their Complaint in bad faith, and it further appearing that plaintiffs' position in opposition to defendant's motion was not frivolous, and

It further appearing that the question of attorney's fees and costs of this action is within the sound discretion of this Court, it is by the Court this 20th day of January, 1978,

ORDERED that defendant's Motion for Award of Costs be, and the same hereby is, denied.