Junior F. PANDIL, Plaintiff-Appellant,

v.

ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellee.

No. 2–65422.

Court of Appeals of Iowa.

Sept. 29, 1981.

David J. Lawler, Fort Dodge, for plaintiff-appellant.

James L. Kramer and Dale A. Johnson of Johnson, Erb, Latham & Gibb, Fort Dodge, for defendant-appellee.

Submitted to OXBERGER, C.J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

JOHNSON, Judge.

Plaintiff, Junior F. Pandil, appeals from trial court's ruling sustaining defendant, Illinois Central Gulf Railroad's, motion for summary judgment. He contends that trial court erred 1) in determining that it was without jurisdiction to hear this case and 2) in concluding that, notwithstanding lack of jurisdiction, plaintiff failed to bring his appeal within the time limitation provided by the union's and employer's collective bargaining agreement. We affirm.

Plaintiff was employed by defendant railroad until March 22, 1975, when he was forced to assume "furlough status" because of a decline in business. This employment status, which entitled plaintiff to certain benefits, was made available to plaintiff pursuant to a merger agreement between defendant and the Brotherhood of Railway Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (the union). During the summer of 1978, plaintiff filed various claims for compensation under the terms of the collective bargaining and merger agreements. He claimed he was not recalled, as required by those agreements, when certain job openings were bulletined by the company during April, 1977, and April, May, June and July, 1978. All claims (except the April, 1977, and April, 1978 claims) were filed within 60 days of the occurrence upon which each was based as required by rule 25(a) of the Schedule of Rules and Working Conditions contained in the collective bargaining agreement. Defendant's Director of Labor Relations declined all claims in his final adverse rulings made on November 13, 14, and 16, 1978.

In addition to filing his claims with defendant, plaintiff also filed a grievance with the union, which rendered its final decision adversely to plaintiff on November 27, 1979. While his union appeal was pending, plaintiff did nothing further to enforce his claim against defendant. As a result of the union's delay in processing his union appeal, plaintiff did not pursue any further action on defendant's decision until February 15, 1980, when he brought the present common law suit for damages against defendant in the Iowa district court. In his petition, plaintiff claimed that he had been damaged by defendant's wrongful conduct in the amount of $75,000.00 arising from loss of wages and loss of railroad retirement benefits.

Defendant filed its answer and, subsequently, filed a motion for summary judgment that asserted 1) plaintiff's claim arising out of the April occurrences were barred by rule 25(a) of the Schedule of Rule and Working Conditions, which required all claims to be presented to the railroad within 60 days after the occurrence upon which they were based, and 2) all claims were barred by rules 25(c) and 25(f) which required all appeals or other action from an adverse ruling of the highest designated railroad officer to be instituted by the employee within nine months of the date of the decision. Defendant's brief and argument to the trial court also urged that trial court lacked jurisdiction to interpret, apply, or reform the provisions of the collective bargaining agreement, or to adjudicate disputes arising thereunder.

Trial court, while stating that the sixty day requirement was inapplicable because the company failed to comply with the provision requiring it to inform plaintiff of the job openings, held that plaintiff's exclusive remedy was administrative under section 3 of the Railway Labor Act, 45 U.S.C. § 153 First (i), and that the court consequently lacked jurisdiction to hear the case. Moreover, notwithstanding lack of jurisdiction, trial court stated that plaintiff failed to bring his action within nine months of the company's final decision (November, 1978) as required by the collective bargaining agreement. Finally, trial court held that, even assuming there was an exception to the "exclusive" administrative remedy, based on the futility of the administrative remedy, the circumstances of plaintiff's appeal to the Adjustment Board did not fall

within the purview of the "futile exception." This appeal followed.

**I. Scope of Review.** Our review of an action at law is for correction of errors only. Iowa Rule App.P. 4.

**II. Subject Matter Jurisdiction.** Defendant bases its jurisdictional argument on the exclusivity of the administrative remedy provided by section 3 of the Railway Labor Act.[1] Plaintiff, on the other hand, argues that an exception to the exclusivity of the administrative remedy exists where pursuit of that remedy would be futile. We agree with defendant's assertion.

■ We begin our analysis by noting that an action by a railroad employee to recover earnings or benefits under a collective bargaining agreement necessarily involves interpretation and construction of the agreement. *See Marchitto v. Central R.R. of New Jersey,* 18 N.J.Super. 163, 165, 86 A.2d 795, 796 (1952). *See also Haney v. Chesapeake & Ohio R.R.,* 498 F.2d 987 (D.C. Cir.1974). Further, the United States Supreme Court has held that under section 3, First (i) of the Railway Labor Act (referring labor disputes to the Railway Adjustment Board), a state court is without power to interpret terms of a collective bargaining agreement, or adjudicate disputes arising out of that agreement. *Order of Ry. Conductors v. Southern Ry.,* 339 U.S. 255, 256, 70 S.Ct. 585, 586, 94 L.Ed.2d 811, 814 (1950); *Slocum v. Delaware Lackawanna & W. R.R.,* 339 U.S. 239, 243–44, 70 S.Ct. 577,

579–80, 94 L.Ed.2d 795, 800 (1950). The Act is equally applicable to collective bargaining disputes ("major disputes") and employee grievances ("minor disputes"). *See Slocum,* 339 U.S. at 242, 70 S.Ct. at 579, 94 L.Ed.2d at 799. The purpose of the Act is to avoid interruption of commerce or an individual carrier, 45 U.S.C. § 151a, and it represents a considered effort on the part of Congress, in effectuating this purpose, to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. *Slocum,* 239 U.S. at 243, 70 S.Ct. at 579, 94 L.Ed.2d at 799–800. The notion that Congress intended the procedures for adjustment of employer-employee disputes under the Railway Labor Act to be optional, not compulsory, and that, accordingly, a state court is free to hear such a case, is not good law. *Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 322–23, 92 S.Ct. 1562, 1564, 32 L.Ed. 95, 98 (1972). To permit a state court to hear such a dispute would invite races of diligence whenever a railroad or union preferred one forum to the other; and if a railroad or union could choose a court instead of the adjustment board, the other party would be deprived of the privilege conferred by § 3 First (i) of the Act. *See Order of Ry. Conductors,* 339 U.S. at 256, 70 S.Ct. at 586, 94 L.Ed.2d at 814. Thus, these administrative procedures are compulsory and exclusive.[2] *Andrews,* 406 U.S. at 322, 92 S.Ct. at 1564, 32 L.Ed.2d at 98.

---

1. 45 U.S.C. § 153(i) provides:

    (i). Disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the Chief Operating Officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by Petition of the parties or by either party to the appropriate division of the adjustment board with a full statement of the facts and all supporting data bearing upon the disputes.

2. In *Andrews,* the court said:

    The term "exhaustion of administrative remedies" in its broader sense may be an entirely appropriate description of the obligation of both the employee and carrier under the Railway Labor Act to resort to dispute settlement procedures provided by that Act. It is clear, however, that in at least some situations the Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another. A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. [citations] He is limited to the judicial review of the Board's proceedings that the Act itself provides. [citations] In such a case the proceedings afforded by 45 USC § 153 First (i),

Relying on *Glover v. St. Louis-San Francisco Ry.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), plaintiff nonetheless contends that an exception to the exclusivity of the administrative remedy exists whenever that remedy is futile.[3] However, even accepting that general proposition, we cannot agree that it applies in this case.

■ First, we believe plaintiff fails to understand the import of the rule that a state court has no power to hear cases involving disputes growing out of the interpretation of employer-employee collective bargaining agreements. *Slocum*, 339 U.S. at 244–45, 70 S.Ct. at 580, 94 L.Ed.2d at 800. *Order of Ry. Conductors*, 339 U.S. at 256, 70 S.Ct. at 586, 94 L.Ed.2d at 814. This means a state court is *without jurisdiction* to hear such cases because federal law preempts the field. (emphasis added). *Walles v. Int'l. Bhd. of Elec. Workers*, 252 N.W.2d 701, 710 (Iowa 1977).

■ Second, assuming, arguendo, that this court has jurisdiction to decide the issue, we also conclude plaintiff has failed to show the applicability of the "futile" exception to the requirement that he exhaust his administrative remedies, thereby enabling him to seek relief in court. We find the court's analysis in *Haney v. Chesapeake & Ohio R.R.*, 498 F.2d 987 (D.C.Cir.1974) (involving an alleged exception to the exhaustion requirement based on a union's breach of duty of fair representation), to be persuasive when it stated:

> ... While the composition of an adjustment board—equal numbers of employer and union representatives, and a single "neutral" member available in case of deadlock—is designed to provide a fair forum for the ordinary grievance, the same composition, appellant says, makes for an inadequate forum in which to

present an argument that may be interpreted as a charge of union nonfeasance.

\* \* \* \* \* \*

> ... In effect, appellant would have us carve out an exception to *Andrews* whenever an aggrieved employee's prosecution of his claim runs the risk of making his union an adversary. Although the concern expressed by appellant is plausible, we conclude that relieving her of the exhaustion requirement would open too large a hole in *Andrews*, and that the sound course is to require her to seek relief before the administrative tribunal, relying for further protection on the general doctrines of law permitting limited judicial surveillance in an action complaining of administrative abuse. In such an action, a court will have before it a record showing the adjustment board's response to the complaint's particular case. This avoids the difficulty of appraising the kind of assertions that appellant puts to us, assertions that are, however plausible, nevertheless speculative.

498 F.2d at 991–92.

Furthermore, allowing a plaintiff to go to court whenever he or she merely anticipates losing a dispute before the board would permit the plaintiff to engage in the type of forum shopping criticized by the Supreme Court in *Order of Ry. Conductors*, 339 U.S. at 256, 70 S.Ct. at 586, 94 L.Ed.2d at 814. We also agree with trial court's conclusion in this case that at the time an appeal to the Adjustment Board could have and should have been made, plaintiff would not have known of the union's adverse decision and that plaintiff, therefore, is using hindsight to bootstrap his failure to pursue an appeal before the Board. *See Sensabaugh v. Ry. Express Agency, Inc.*, 348 F.Supp. 1398, 1402 (W.D.Va.1972).

will be the only remedy available to the aggrieved party.
406 U.S. at 325, 92 S.Ct. at 1565, 32 L.Ed.2d at 100.

**3.** Two other exceptions were articulated earlier by the court in *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842, 855 (1967):

1) where the employer repudiates the private grievance machinery; and
2) when the union breaches its duty of fair representation.

We also believe there is an additional reason for finding plaintiff's reliance on the *Glover* exception to be misplaced. That case concerned a suit by employees of a railroad against the employer *and* the union jointly. (emphasis added). Plaintiffs claimed invidious racial discrimination by both defendant organizations, and existence of a concerted effort by both the employer and the union to defeat the employees' claims. The Court's rationale for carving out an exception to the generally exclusive jurisdiction of the Adjustment Board in employee grievances, thus, was based on the fact that the case involved the union and employer as parties against the employees. The court said:

It is true, as the respondents here contend that this Court has held that the Railroad Adjustment Board has exclusive jurisdiction, under § 3 first (i) of the Railway Labor Act, ... to interpret the meaning of the terms of a collective bargaining agreement. We have held, however, that § 3 First (i) by its own terms applies only to disputes between an employee or group of employees and a carrier or carriers. *Conley v. Gibson,* 355 U.S. 41, 44 [78 S.Ct. 99, 101, 2 L.Ed.2d 80] (1957). In *Conley,* as in the present case, the suit was one brought by the employees against their own union .... In the present case, of course, the petitioners sought relief not only against their union but also against the railroad, ... in essence the "dispute" is one between some employees on the one hand and the union and management together on the other, not one "between an employee or group of employees and a carrier or carriers." 393 U.S. 324, 328–29, 89 S.Ct. 548, 550–51, 21 L.Ed.2d 519, 523.

Since the instant case involves only the employer and the employee as parties, we find the exception set out in *Glover* inapplicable. We have also considered the cases from several circuits cited by plaintiff in support of the exception and find that these cases also concern suits in which the union was a party.

4. For cases where courts have used N.L.R.A. analysis for R.L.A. facts, *see Magnuson,* 576

Lastly, we note that characterizing plaintiff's claim as one based purely on common law breach of contract does not protect it from the effect of the *Andrews* "exclusivity" rule. Our research of current law reveals only one narrow exception to federal preemption in which a plaintiff retains a common law cause of action. This exception was declared in *Farmer v. United Bhd. of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), a case involving a claim of intentional infliction of emotional distress resulting from outrageous conduct of union officials. There the court held the claim was not preempted by the National Labor Relations Act (N.L.R.A.), 29 U.S.C.A. 151 et seq., because 1) the grievance was not one expressly covered by the N.L.R.A., 2) the State had substantial interest in protecting its citizens from that type of conduct, 3) the risk that the action would touch an area of primary federal concern did not outweigh the State's interest in protecting its citizens, and 4) state law permitted recovery only as a result of "outrageous" conduct.

We do not believe *Farmer* is controlling authority for this case, even disregarding the fact that the cases arose under separate Acts.[4] Unlike *Farmer,* the instant case is based on facts which are inextricably intertwined with the grievance procedures of the collective bargaining agreement and the R.L.A. and, therefore, does not fit within the narrow exception to federal preemption as explained in *Farmer. See Magnuson v. Burlington N., Inc.,* 576 F.2d 1367, 1369 (9th Cir. 1978) (complaint alleging common law tort of intentional infliction of emotional distress was properly dismissed because alleged misfeasance of railroad employees was a grievance governed by the collective bargaining agreement and thus preempted by federal law).

For all the above reasons, we therefore conclude that the district court of this state

F.2d at 1369–70.

was without jurisdiction to hear the matter and that plaintiff is required to exhaust his federal administrative remedies.

**III. Summary Judgment.** Having determined that the district court did not have jurisdiction to hear this case, we find it unnecessary to consider whether the provision in the collective bargaining agreement requiring exhaustion of union appeal procedures before taking outside action stays the nine month limitation contained in the schedule of rules of the collective bargaining agreement. We also need not consider whether defendant is barred from asserting the sixty day limitation.

Judgment of the district court is affirmed.

AFFIRMED.