# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3100

_____

| | |
|---|---|
| Duane Carlson, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the District |
| | * of Minnesota. |
| Arrowhead Concrete Works, Inc., | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: March 13, 2006
Filed: April 19, 2006

_____

Before MURPHY, BOWMAN, and BENTON Circuit Judges.

_____

MURPHY, Circuit Judge.

Duane Carlson (Carlson) brought this action in state court against his former employer Arrowhead Concrete Works, Inc. (Arrowhead) for retaliatory discharge and failure to recall, in violation of the Minnesota Occupational Safety and Health Act and the state whistleblower statute. Arrowhead removed the case to the federal district court, alleging complete preemption under § 301 of the Labor Management Relations Act (LMRA), and then moved to dismiss. The district court[1] denied the motion to dismiss and remanded the case after concluding that it lacked subject matter

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

jurisdiction over Carlson's claims because they were not completely preempted. Arrowhead appeals, but we dismiss the appeal for lack of jurisdiction.

## I.

Arrowhead hired Carlson as a pump truck operator in December 2002. The terms of his employment were governed by a collective bargaining agreement (CBA) between the local Teamsters Union and Arrowhead. The CBA and the accompanying memorandum of understanding provide that no driver shall be required to drive a truck that does not comply with all state and local safety regulations. There are also detailed provisions governing seniority, layoffs, and recall rights and a grievance arbitration provision for disputes about the CBA.

In early 2003 Arrowhead sent Carlson to a safety training course conducted by the pump truck manufacturer, Swing America (Swing). After his training Carlson became concerned about the safety of two of the trucks, and he reported his concerns to Arrowhead owners, Jim and Gerry Carlson (no relation to Duane). Carlson told Jim and Gerry that driving these trucks would violate various laws, including the Occupational Safety and Health Act (OSHA). Although he asked them to have the trucks inspected, they did not. Carlson also contacted Swing and Concrete Pump Repair (CPR) to report safety issues with the trucks, and they suggested he bring the trucks in for repairs.

During the summer of 2003 Carlson continued to raise safety concerns with Jim and Gerry, who suggested that the trucks could be serviced in the winter when they were not in use. Carlson also took one truck into CPR to fix a crack on the bottom, and CPR told him that many more repairs were needed. Gerry instructed Carlson to return the truck without making the repairs. In August Carlson noticed more serious structural problems with the truck and told Jim and Gerry that if the truck were not

repaired, it could seriously injure or kill someone. Jim responded "you should keep your mouth shut and do what you are told."

After talking with the union and gaining its support, Carlson informed Arrowhead on August 28, 2003 that he was resigning from his pump truck driving position in two weeks and would exercise his seniority rights under the CBA to work in another position. He added, however, that he would continue to drive the trucks if they were repaired. On September 10, 2003, Carlson left his pump truck position and began working on a mixer truck. That same day Jim told Carlson to start the pump truck for a job, and Carlson refused. Jim responded "[l]isten you little cocksucker, get in that truck right fucking now and get it ready. I am sick of your whining." He also told Carlson that "some fuckers are going down the road and getting laid off. You're going to be the first one you son of a bitch." Carlson reported this incident to the union, but it declined to file a grievance. Later that fall Carlson was given permission to get one of the trucks inspected. The mechanic at CPR found the truck extremely unsafe, but when Gerry was told the cost of the repairs he ordered Carlson to return the truck without having it fixed. Carlson refused. In November 2003 he was laid off, along with six other workers. In June 2004 some of the workers were called back to work, but despite Carlson's length of service he was not among those recalled.

Carlson brought this action in state court in November 2004, alleging violations of the Minnesota Whistleblower's Act, Minn. Stat. § 181.932, and the state Occupational Safety and Health Act (MOSHA), Minn. Stat. § 182.654, based on the circumstances surrounding his discharge and Arrowhead's failure to rehire him in accordance with the seniority provisions of the CBA. Arrowhead removed the case to the federal district court on December 16, 2004, contending that Carlson's claims were completely preempted[2] by § 301 of the LMRA, 29 U.S.C. § 185. After the case

_____

[2] Complete preemption permits a party to remove a case from state court based on federal question jurisdiction. See Caterpillar v. Williams, 482 U.S. 386, 392-94 (1987). It is distinct from the affirmative defense of preemption which contests

had been removed Arrowhead moved to dismiss, alleging that Carlson's claims were completely preempted because they required interpretation of the CBA. It also alleged in the alternative that his claims grew out of conduct arguably protected by the National Labor Relations Act (NLRA) and were thus preempted under the Garmon doctrine.[3] Carlson responded that his case had been improperly removed to federal court which lacked jurisdiction over it.

The district court determined that Carlson's state law claims were not completely preempted by LMRA § 301 because neither required interpretation of the CBA and that subject matter jurisdiction was therefore lacking.[4] It denied Arrowhead's motion to dismiss and remanded the case to state court pursuant to 28 U.S.C. § 1447(c). Arrowhead appeals.

## II.

In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments. Krein v. Norris, 309 F.3d 487, 490 (8th Cir. 2002); Carney v. BIC Corp., 88 F.3d 629, 631 (8th Cir. 1996). Arrowhead asserts that this court has jurisdiction over its appeal under 28 U.S.C. § 1291 which grants appellate jurisdiction over appeals from a final order. Alternatively, it argues that the district court's order is appealable under the collateral order exception to the finality

---

whether a particular claim may be litigated.

[3] The Garmon doctrine originated in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244-47 (1959), where the Supreme Court held that neither state nor federal courts have jurisdiction over claims arising under § 7 or § 8 of the NLRA which the statute assigns to the National Labor Relations Board. This doctrine is unrelated to complete preemption under § 301 of the LMRA. Teamsters v. Lucas Flour Co., 369 U.S. 95, 101 n.9 (1962).

[4] Counsel affirmed at oral argument that the parties are not diverse.

rule. Carlson responds that under 28 U.S.C. § 1447(d) this court lacks jurisdiction over an appeal from a remand order and that Arrowhead's appeal is not from a final order or reviewable under the collateral order exception. Appellant Arrowhead bears the burden to prove that appellate jurisdiction exists. Reinholdson v. Minnesota, 346 F.3d 847, 849 (8th Cir. 2003).

Congress addressed appellate jurisdiction over remand orders in 28 U.S.C. § 1447(d), which provides that except in civil rights cases, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." (emphasis added). The Supreme Court has instructed that § 1447(d) "must be read *in pari materia* with § 1447(c)." Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127 (1995). Section 1447(c) provides that motions to remand based on a procedural defect must be made within thirty days of removal and requires that a case be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." The district court explicitly based its remand order in this case on § 1447(c).

Under the statutory scheme remand orders based on a procedural defect or lack of subject matter jurisdiction are unreviewable. Things Remembered, 516 U.S. at 127; Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 345-46 (1976). So long as the district court's remand order is based on one of these two grounds, "a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)." Things Remembered, 516 U.S. at 127-28; see also Horton v. Conklin, 431 F.3d 602, 604 (8th Cir. 2005).[5] This jurisdictional bar applies even if the district court's remand

---

[5] In contrast, if a district court remands a case after the federal claims have been resolved and it has chosen not to exercise supplemental jurisdiction, its order is reviewable because it is not covered by § 1447(c). See, e.g., Lindsey v. Dillard's, Inc., 306 F.3d 596, 598-99 (8th Cir. 2002); Green v. Ameritrade, Inc., 279 F.3d 590, 595 (8th Cir. 2002); St. John v. Int'l Ass'n of Machinists & Aerospace Workers, 139 F.3d 1214, 1216-17 (8th Cir. 1998).

decision was in error. Thermtron, 423 U.S. at 343 ("this section prohibits review of all remand orders...whether erroneous or not"); see also Vincent v. Dakota, Minnesota & Eastern R.R. Corp., 200 F.3d 580, 581 (8th Cir. 2000); Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 623 (8th Cir. 1997). Where the district court has remanded under § 1447(c), the scope of our review is limited to verifying that the actual basis for remand was lack of subject matter jurisdiction. Lindsey v. Dillard's, Inc., 306 F.3d 596, 598 (8th Cir. 2002); Kennedy v. Lubar, 273 F.3d 1293, 1297 (10th Cir. 2001); Transit Cas. Co., 119 F.3d at 624; Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1450 (4th Cir. 1996).

The doctrine of complete preemption "converts an ordinary state...law complaint into one stating a federal claim" providing a basis for removal of the state court action to federal court. Caterpillar v. Williams, 482 U.S. 386, 393 (1987). Section 301 of the LMRA preempts state law claims "where the resolution of the state claim substantially depends on the interpretation of terms or provisions of a collective bargaining agreement," Hanks v. General Motors Corp., 906 F.2d 341, 343 (8th Cir. 1990) (internal quotations omitted), or where it is "inextricably intertwined" with consideration of the CBA. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). On the other hand, "[m]ere reference to a collective bargaining agreement is not sufficient to result in preemption," Thomas v. Union Pac. R.R. Co., 308 F.3d 891, 893 (8th Cir. 2002), and "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Complaints alleging a violation of state law without asserting a breach of the CBA have been found not preempted by federal law. See Deneen v. Northwest Airlines, Inc., 132 F.3d 431 (8th Cir. 1998); Welch v. Gen. Motors Corp., Buick Motor Div., 922 F.2d 287 (6th Cir. 1990). It is the plaintiff who controls the wording of the complaint, and reliance on the terms of a CBA to establish a state law claim can lead to complete preemption. See Fant v. New England Power Serv. Co., 239 F.3d 8, 14-16 (1st Cir. 2001) (affirming district court decision that state

law claim for failure to recall was preempted by the LMRA because it was based on seniority provisions of the CBA); Anderson v. Gen. Motors Corp., 35 Fed. Appx. 175, 179 (6th Cir. 2002) (same); Pandil v. Illinois Cent. Gulf R.R., 312 N.W.2d 139, 143 (Iowa App. 1981).

In this case Carlson's complaint does refer to the seniority provision of the CBA, directly quote language from this provision, and cite the alleged breach of the CBA as proof of his whistleblower claim. See Complaint, ¶¶ 29-30, 38. The whistleblower statute does not address employee recall, and the recall rights Carlson asserts are only found in the CBA. Although adjudication of Carlson's claims could require more than reference to the CBA, it has not been shown that it would involve interpretation of the CBA. The district court opinion shows that its decision was based on lack of subject matter jurisdiction and it explicitly remanded the case pursuant to § 1447(c), making the remand unreviewable under § 1447(d). The jurisdictional situation is even clearer here than in our Vincent decision where we reasoned that the remand order must have been based on § 1447(c) because the "only basis for remand discussed by the district court was whether it had subject matter jurisdiction." Vincent, 200 F.3d at 582; see also Transit Cas. Co., 119 F.3d at 625; Whitman v. Riley's Inc., 886 F.2d 1177, 1181 (9th Cir. 1989); Soley v. First Nat'l Bank of Commerce, 923 F.2d 406, 409 (5th Cir. 1991).

Arrowhead nonetheless urges that we retain appellate jurisdiction over this case under 28 U.S.C. § 1291. Section 1291 vests the circuit courts with jurisdiction over appeals from "all final decisions of the district courts of the United States," and it has also been interpreted to permit appeals from collateral orders which would otherwise not be reviewable. See Quackenbush v. Allstate Insur. Co., 517 U.S. 706, 712 (1996). Arrowhead argues that the remand order in this case was a final order, but alternatively that it should be considered a collateral order subject to appeal.

A decision is considered "final and appealable under § 1291 only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Quackenbush, 517 U.S. at 712; Reinholdson, 346 F.3d at 849. Arrowhead's finality argument relies primarily on Hill v. Bellsouth Communs., Inc., 364 F.3d 1308 (11th Cir. 2004), an easily distinguishable case since it did not consider the reviewability of a remand order issued under § 1447(c). Hill turned instead on the appealability of an order remanding state law claims where the district court had declined to exercise supplemental jurisdiction over them. 364 F.3d at 1314. It is thus inapposite.

Arrowhead argues that the portion of the district court's order denying its motion to dismiss Carlson's complaint is a final order appealable under § 1291. Whether the denial of the motion to dismiss may be deemed a final order under § 1291 turns on whether it was only part of the whole district court remand order or whether it is severable. An order is severable from a remand order and subject to appellate review if (1) it precedes the order of remand "in logic and in fact" and was issued while the district court had control of the case, and if (2) the order sought to be separated is "conclusive." City of Waco v. United States Fidelity & Guar. Co., 293 U.S. 140, 143 (1934). We examine each element in turn.

Whether the denial of Arrowhead's motion precedes the remand portion of the court's order in logic and fact depends in part upon the significance we give to the sequence of the rulings made by the district court. In its order the district court denied the motion to dismiss before remanding the case to state court. Had the district court's denial of Arrowhead's motion to dismiss followed the remand portion of the order, the denial of the motion would have been superfluous since the court would have already determined it lacked jurisdiction and divested itself of the case. Arrowhead has not referenced, nor have we found, any case where a similar chronology within an order was determinative of the final order issue. We have recently dismissed an appeal for lack of jurisdiction in another case with a similar scenario, where the district court first

denied a motion to dismiss and then remanded for lack of subject matter jurisdiction. See Horton, 431 F.3d 603 (appeal dismissed under § 1447(d) for lack of appellate jurisdiction); see also Whitman, 886 F.2d 1177 (same). The significance given to the sequence within the court's order is unsurprising since "[a]ny order remanding a matter to state court for lack of subject matter jurisdiction necessarily denies all other pending motions." Dahiya v. Talmidge Int'l, Ltd., 371 F.3d 207, 210 (5th Cir. 2004).

Even if the denial of the motion to dismiss preceded the remand order in logic and fact, that portion of the order would not be severable unless the denial was "conclusive." A federal district court ruling is conclusive if it is functionally unreviewable in state court. City of Waco, 293 U.S. at 143; Arnold v. State Farm Fire and Cas. Co., 277 F.3d 772, 777 (5th Cir. 2001). Since the district court's decision was based on lack of federal subject matter jurisdiction, the denial of the motion to dismiss is not considered conclusive. See Dahiya, 371 F.3d at 210 (refusal to compel arbitration was jurisdictional and thus not conclusive); Angelides v. Baylor Coll. of Med., 117 F.3d 833 (5th Cir. 1997) (denial of a motion to dismiss was jurisdictional decision reviewable by state court and not conclusive). Here, the district court only ruled on the issue of complete preemption under LMRA § 301 and specifically noted that it was not addressing any other arguments in Arrowhead's motion to dismiss. Carlson v. Arrowhead Concrete Works, Inc., 375 F. Supp. 2d 835, 839 n.3 (D. Minn. 2005). Although portions of orders dismissing a party or a claim have sometimes been found conclusive, final, and subject to appellate review, see, e.g., City of Waco, 293 U.S. at 142-43; Allen v. Ferguson, 791 F.2d 611, 613 (7th Cir. 1986); Katsaris v. United States, 684 F.2d 758, 761 (11th Cir. 1982), the test is whether those portions affected "the parties' substantive rights." Nutter v. Monongahela Power Co., 4 F.3d 319, 321 (4th Cir. 1993).

Here, the denial of Arrowhead's motion to dismiss did not alter the substantive rights of either party. Nothing in the district court's order prevents Arrowhead from raising the affirmative defense of preemption or from bringing a motion to dismiss in

the state court proceedings below. See Vincent, 200 F.3d at 582 (rejecting appellant's argument that the preemption decision had preclusive effect in state court); Nutter, 4 F.3d at 321 (same). Indeed, "because the district court remanded for lack of subject matter jurisdiction, it lacked jurisdiction to make any substantive rulings, and thus no rulings of the federal court have any preclusive effect on the substantive matters before the state court." Transit Cas. Co., 119 F.3d at 624. We therefore conclude that the portion of the district court's order denying Arrowhead's motion to dismiss is not severable from its remand order, and thus not separately appealable under § 1291.

Arrowhead also contends that this court has appellate jurisdiction over the remand order of the district court under the collateral order exception. This doctrine establishes a narrow exception to the final order rule and permits an appeal if the district court order (1) conclusively determined a disputed question; (2) resolved an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. See Quackenbush, 517 U.S. at 712; Cooper & Lybrand v. Livesay, 437 U.S. 463, 468 (1978); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Arrowhead argues that all three parts of this test are met in this case: the district court's order conclusively determined whether § 301 of the LMRA completely preempts state law; its resolution of the jurisdictional issue was a question separate from the merits; and any state court determination upon remand will be effectively unreviewable in federal court.

Arrowhead cites no case, and we have found none, which has treated a district court remand order under § 1447(c) as a reviewable collateral order. See Excimer Assocs., Inc. v. CLA Vision, Inc., 292 F.3d 134, 138 (2d Cir. 2002) (noting that "[w]e have not found a single case in which this Court has invoked the collateral order doctrine to confer appellate jurisdiction where the district court's remand order was based on a determination that it lacked subject matter jurisdiction"). To the contrary, courts of appeal have consistently held that § 1447(d) bars review of remand orders by the district court when they are based on the lack of complete preemption under §

301 of the LMRA. <u>See</u> <u>Dahl v. Rosenfeld</u>, 316 F.3d 1074 (9th Cir. 2003) (dismissing for lack of jurisdiction based on district court's finding that § 301 of the LMRA did not preempt state law); <u>Kennedy</u>, 273 F.3d at 1297 (same); <u>Nutter</u>, 4 F.3d 319 (same); <u>Soley</u>, 923 F.2d 406 (same); <u>Whitman</u>, 886 F.2d at 1182 (same). And while our court has not previously had occasion to address appellate jurisdiction over a remand order based on the lack of complete preemption, we have determined that a § 1447(c) remand order in analogous circumstances was unreviewable. <u>See</u> <u>Vincent</u>, 200 F.3d at 581-82 (jurisdiction lacking over § 1447(c) remand order holding state law claims not completely preempted by the Railway Labor Act).

Arrowhead's invocation of the collateral order rule in these circumstances would virtually eviscerate § 1447(d) by allowing review of essentially any remand order if it were framed by the appealing party as a collateral order. <u>See</u> <u>In re WTC Disaster Site</u>, 414 F.3d 352, 368 (2d Cir. 2005); <u>Good v. Voest-Alpine Indus., Inc.</u>, 398 F.3d 918, 926 (7th Cir. 2005) ("If every remand decision could be relabeled as a collateral order, there would be nothing left of...§ 1447(d)."). Moreover, such a holding would directly contradict the rationale and purpose of § 1447(d) which is to prevent the delay of state court proceedings by the federal appeals process. <u>See</u> <u>Thermtron</u>, 423 U.S. at 351. We therefore conclude that the remand order in this case is not a collateral order reviewable under 28 U.S.C. § 1291.

Because the district court's remand order was issued pursuant to § 1447(c) for lack of subject matter jurisdiction and does not qualify as an a final order or collateral order appealable under § 1291, we lack jurisdiction under § 1447(d) to review the merits of the case. Accordingly, the appeal is dismissed.

_____